PABLO VAZQUEZ *v.* COMMISSIONER
OF CORRECTION
(AC 30302)

Beach, Bear and Mihalakos, Js.

Argued May 19—officially released August 24, 2010

*Damon A. R. Kirschbaum*, for the appellant (petitioner).

*Jo Anne Sulik*, senior assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, *Brenda Hans*, assistant state's attorney, and *Erik T. Lohr*, former assistant state's attorney, for the appellee (respondent).

*Opinion*

BEAR, J. The petitioner, Pablo Vazquez, appeals following the habeas court's denial of his petition for certification to appeal from the judgment denying his third amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the court improperly denied his petition for certification to appeal because the court made several errors in determining that there was no merit to his claim of ineffective assistance of counsel. On the merits of his ineffective assistance claim, he argues that his trial counsel and his replacement trial counsel provided ineffective assistance by

failing to advise him adequately concerning the advisability of accepting the plea offer advanced by the state. We agree that the court abused its discretion in denying the petition for certification. Nevertheless, we conclude that the court properly determined that the petitioner had failed to prove that counsel rendered ineffective assistance. Accordingly, we affirm the judgment of the habeas court.

The following facts are relevant to our resolution of the petitioner's appeal. In the case underlying the habeas petition, the petitioner had been charged with assault in the first degree in violation of General Statutes § 53a-59 for striking a man with a beer bottle during an altercation in a bar and causing him to lose permanently the sight in one eye. The petitioner asserted a claim of self-defense during the trial proceedings and maintained that the injured man had placed him in a choke hold, that he could not retreat to safety and that he feared for his life, causing him to take the defensive measure of striking the man with a beer bottle.

Initially, the petitioner had been represented by attorney Raul Davila. Davila represented the petitioner during pretrial negotiations, at which time the state advanced the petitioner a plea offer of ten years incarceration, execution suspended after four years, with an unspecified term of probation. The petitioner was scheduled to appear in court on July 1, 2002, to accept or reject the plea offer. Instead, however, the petitioner fired Davila and replaced him with attorney Richard Cohen.[1] The state extended the plea offer until Labor Day.

[1] There is some discrepancy in the record as to whether the state was requiring the petitioner to plead guilty to assault in the first degree pursuant to § 53a-59 or to assault in the second degree pursuant to General Statutes § 53a-60 in exchange for this ten year sentence. Cohen testified during the habeas trial that the state's offer required the petitioner to plead guilty to assault in the first degree. Davila testified that the offer required the petitioner to plead guilty to assault in the second degree, the court found that the offer required the petitioner to plead guilty to assault in the second

The petitioner declined the state's plea offer and proceeded to a jury trial, asserting his claim of self-defense. The jury found the petitioner guilty of assault in the first degree, and the court sentenced him to a term of sixteen years incarceration, execution suspended after eight years, with five years probation. The petitioner filed a direct appeal of his conviction on June 29, 2004, his appellate counsel was permitted to withdraw his appearance on June 21, 2005, and the petitioner's direct appeal was dismissed on December 6, 2005, for failure to file a brief with this court.

While his direct appeal was pending, the petitioner, on December 9, 2004, filed a petition for a writ of habeas corpus, which was amended twice. He filed his third amended petition on May 30, 2007, alleging that both Davila and Cohen had provided ineffective assistance of counsel by "fail[ing] to adequately counsel the petitioner regarding the advisability of accepting the state's plea offer . . . ." The petitioner argued during the habeas trial that there was no viable self-defense position that could have been raised and that such a defense was "absurd." The habeas court concluded in relevant part that the plea offer had been conveyed and explained to the petitioner in a proper manner, and it denied his habeas petition and petition for certification to appeal. This uncertified appeal followed. Additional facts will be set forth as necessary.

degree, and the petitioner in his main brief also states that the plea offer required him to plead guilty to the charge of assault in the second degree. We note, however, that assault in the second degree is a class D felony, carrying a maximum penalty of five years imprisonment. See General Statutes §§ 53a-60 and 53a-35a (8). Accordingly, such a plea agreement legally could not be undertaken. We assume, therefore, that the offer actually required the petitioner to plead guilty to the class B felony of assault in the first degree under subsection (a) (2) of § 53a-59. We also note that § 53a-59 (a) (1), a violation of which the petitioner ultimately was convicted, requires a sentence of between five and twenty years, five years of which may not be suspended or reduced. General Statutes §§ 53a-59 (b) and 53a-35a (6).

I

The petitioner initially claims that the court abused its discretion in denying his petition for certification to appeal because the court failed to make any findings regarding deficient performance or prejudice and that it made two erroneous factual findings, thus leading it to the improper conclusion that the petitioner's claim of ineffective assistance of counsel had no merit. We agree that one important factual finding of the court was clearly erroneous; this error, combined with the claim of ineffective assistance of counsel in this case, leads us to the conclusion that the petitioner has raised an issue that deserved encouragement to proceed further. Accordingly, we conclude that the court abused its discretion in denying the petition for certification to appeal.

We begin by setting forth the appropriate standard of review. "The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . Thus, [t]his court does not retry the case or evaluate the credibility of the witnesses. . . . Rather, we must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony. . . .

"Furthermore, [w]e have previously determined that if either the petitioner or the respondent is denied a timely request for certification to appeal from a habeas court's judgment, such review may subsequently be obtained only if the appellant can demonstrate that the denial constituted an abuse of discretion. . . . We recognize that [i]n enacting [General Statutes] § 52-470 (b), the legislature intended to discourage frivolous

habeas appeals. . . . A habeas appeal that satisfies one of the criteria set forth in *Lozada* v. *Deeds*, 498 U.S. 430, 431–32, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991), is not, however, frivolous and warrants appellate review if the appellant can show: that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . . [I]f an appeal is not frivolous, the habeas court's failure to grant certification to appeal is an abuse of discretion. . . .

"In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous. In other words, we review the petitioner's substantive claims for the purpose of ascertaining whether those claims satisfy one or more of the three criteria identified in *Lozada* and adopted by this court for determining the propriety of the habeas court's denial of the petition for certification. Absent such a showing by the petitioner, the judgment of the habeas court must be affirmed." (Citations omitted; internal quotation marks omitted.) *Taylor* v. *Commissioner of Correction*, 284 Conn. 433, 448–49, 936 A.2d 611 (2007).

The petitioner argues that the court failed to make any findings regarding deficient performance or prejudice pursuant to *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).[2] He

---

[2] Pursuant to *Strickland* v. *Washington*, supra, 466 U.S. 687, "[a] claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

also argues that two important factual findings made by the court were clearly erroneous: "The habeas court made two clearly erroneous factual findings. It found that . . . Davila advised the petitioner to accept the plea offer, and it found that the plea offer was meaningfully explained to the petitioner." He continues: "The factual finding that . . . Davila advised the petitioner to accept the plea offer is clearly erroneous because . . . Davila testified that he did not advise the petitioner to accept the plea offer. The factual finding that the plea offer was meaningfully explained to the petitioner is clearly erroneous because both of the petitioner's trial counsels testified that they advised the petitioner that he would be found not guilty if the jury believed his version of events. This is a misstatement of the law because the jury could have believed the petitioner's version of events, yet still found him guilty because [it] did not think that it was reasonable for the petitioner to use deadly force against [the victim]."

As to the petitioner's argument that the court failed to conduct a *Strickland* analysis or make the findings necessary for such an analysis, we are not persuaded. In rendering its decision, the court clearly found that counsel adequately had advised the petitioner regarding the plea offer, and that the plea offer "had been properly conveyed and explained to the petitioner" by counsel. The court further found that Davila had conveyed the state's offer to the petitioner, that he had discussed the merits of the state's case and the petitioner's claim of self-defense, and that he had advised the petitioner that it would be unlikely that the petitioner could get a fully suspended sentence. Each of these findings, although not accompanied by a citation to *Strickland* or the

proceeding would have been different." (Internal quotation marks omitted.) *Fernandez* v. *Commissioner of Correction*, 291 Conn. 830, 835, 970 A.2d 721 (2009).

words "deficient performance," express the court's conclusion that counsel's performance was not deficient regarding the proper evaluation and explanation of the plea offer. Therefore, the court found, albeit implicitly, that the petitioner had failed to meet his burden of showing deficient performance.

We next review the petitioner's argument that two of the court's important factual findings were clearly erroneous. "[A] finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Orcutt v. Commissioner of Correction*, 284 Conn. 724, 742, 937 A.2d 656 (2007).

Our review of the record reveals the following. Davila testified that the state had offered the petitioner a sentence of ten years incarceration, execution suspended after four years, with five years probation, and the right to argue for less, in exchange for a guilty plea to the charge of assault in the second degree, and that the court had stated that the offer was fair.[3] He testified that when the state makes an offer, he evaluates it with an eye toward what is in the best interest of his client. Davila discussed the case with the petitioner and had the petitioner write down everything that had happened regarding the altercation at the bar. He stated that the petitioner had told him that the victim had placed him in a choke hold, that the victim was a bigger man than was he, that the victim actually had lifted him off of the floor and that he could not free himself from the choke hold. Davila testified that he thought the petitioner had a viable claim of self-defense, but that the

---

[3] See footnote 1 of this opinion.

stakes were "extremely high," given the nature of the charge.

Davila stated that he fully discussed the state's plea offer with the petitioner and told him that the jury could find that the amount of force used by him was excessive and that he could be convicted on that basis. He testified that he did not "come out and say, look, you need to take this offer, [but that he] did say . . . look, you need to take into account the strength of the case and the weaknesses of the case—take into account that in all likelihood, should this case go to trial, they're going to . . . [charge you] with assault [in the first degree], which carried a five year minimum mandatory" sentence, which is more than the four years to serve that the state was offering, plus he had the right to argue for less. Davila also testified that he told the petitioner that he should consider the offer but that he did not force him to take the offer or tell him that he needed to take the offer.

Cohen testified that the state's theory of the case was that there had been a fight on the dance floor at a bar, and the victim was escorting people out of the bar. The petitioner, without provocation, then struck the victim with an empty beer bottle, blinding him in one eye. The petitioner's version of events was that there had been an altercation on the dance floor, the victim then put the petitioner in a choke hold, the petitioner feared for his safety and health, and, therefore, the petitioner took the defensive measure, after freeing an arm, to grab a beer bottle and hit the victim with it.

Cohen also testified that he always advises a client in a criminal case about the probable outcome of the case. He testified that if he believes that the state has a weak case, and the client asserts his innocence, he might advise the client not to accept a plea offer. On the other hand, if the state's case were strong, and

he had discussed the case with his client, he would recommend that the client accept a plea offer. He also testified that he remains cognizant of the possibility of coercing a criminal client into a plea offer, and he avoids doing so by "discussing with the client the alternatives and the possibilities." As to his discussions with the petitioner, Cohen testified that he did not fear coercing the petitioner into accepting a plea deal because he had had numerous conversations with the petitioner and knew that the petitioner "was an intelligent man who had considered the possibilities and [who] had very strong opinions about the case and about the defenses that could be raised." When asked whether he specifically had advised the petitioner to accept the plea deal offered by the state, Cohen testified that he did not advise the petitioner to accept the offer but that he, instead, advised him to consider the offer. He stated that he did this because he thought that the petitioner had discharged Davila because Davila had advised him to accept the state's offer. Cohen discussed the state's offer with the petitioner, and the petitioner convinced him that he wanted to go to trial and that Cohen "should accede to his wishes . . . ." Cohen also believed that the petitioner had a viable self-defense claim and that the petitioner reasonably had feared for his life or safety when he took the defensive measure of hitting the victim with the bottle.

Cohen fully discussed with the petitioner the elements of assault in the first degree, and he explained that the injury to the victim was a serious physical injury, that the beer bottle could be defined as a deadly weapon or a dangerous instrument and that the state had a strong case but for the petitioner's claim of self-defense. Cohen explained the elements of self-defense to the petitioner, and he believed that the petitioner had a viable defense but that the jury would have to believe that he had acted reasonably. Cohen believed

that the petitioner's use of force was reasonable on the basis of what the petitioner had told him: that the victim was a large man with an athletic build who had put him in a painful choke hold twice, that he was about to lose consciousness, that he had no place to which he could retreat safely and that he had feared for his life. Cohen discussed the evidence with the petitioner, the option to plead guilty, the state's offer of ten years, execution suspended after four years, the right to argue for less time, his potential of a twenty year sentence with a mandatory minimum sentence of five years, if unsuccessful at trial, the fact that there are no guarantees at trial and that if he lost at trial, he likely would receive a greater sentence than that offered by the state.

The petitioner claims that the habeas court made two important clearly erroneous factual findings: (1) that Davila had advised the petitioner to accept the plea offer and (2) that the plea offer was meaningfully explained to the petitioner. After reviewing the record in this case, including the testimony as cited previously, we agree with the petitioner that the court's finding that Davila had advised the petitioner to accept the plea offer is not supported adequately by the record. The record, however, does support the court's finding that the plea offer had been meaningfully explained to the petitioner. Nevertheless, because we agree with the petitioner that the court did make an erroneous finding regarding an important fact, combined with the petitioner's claim of ineffective assistance of counsel under the facts of this case, we conclude that the petitioner has demonstrated that his appeal is not frivolous and that the issue raised deserves encouragement to proceed further. See *Lozada* v. *Deeds*, supra, 498 U.S. 431–32; see also *Small* v. *Commissioner of Correction*, 98 Conn. App. 389, 391–92, 399–400, 909 A.2d 533 (2006) (agreeing habeas court abused discretion in denying petition for certification to appeal but concluding, nonetheless, that court

properly found counsel had not rendered ineffective assistance), aff'd, 286 Conn. 707, 946 A.2d 1203, cert. denied sub nom. *Small* v. *Lantz*, 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008).

II

The petitioner claims that he was denied the effective assistance of counsel because neither Davila nor Cohen advised him adequately about the advisability of accepting the plea offer advanced by the state. He argues that counsel had the duty to explain the relevant law and that in his case, counsel did not explain, nor did they understand, that he likely would be found guilty even if the jury believed everything that he said. He argues further that had counsel informed him of the law and the likelihood that he would not succeed on his defense, he would have pleaded guilty and taken the state's plea offer. We are not persuaded.

We begin by setting forth the applicable standard of review and the law governing ineffective assistance of counsel claims. "The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review." (Internal quotation marks omitted.) *Mozell* v. *Commissioner of Correction*, 291 Conn. 62, 76–77, 967 A.2d 41 (2009).

"A criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. *Strickland* v. *Washington*, [supra, 466 U.S. 686]. This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. *Copas* v. *Commissioner of Correction*,

234 Conn. 139, 153, 662 A.2d 718 (1995). . . . It is axiomatic that the right to counsel is the right to the effective assistance of counsel. . . . A claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . *Ledbetter* v. *Commissioner of Correction*, 275 Conn. 451, 460, 880 A.2d 160 (2005), cert. denied sub nom. *Ledbetter* v. *Lantz*, 546 U.S. 1187, 126 S. Ct. 1368, 164 L. Ed. 2d 77 (2006). . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . The claim will succeed only if both prongs are satisfied." (Internal quotation marks omitted.) *Mozell* v. *Commissioner of Correction*, supra, 291 Conn. 77.

The crux of the petitioner's claim is that both of the petitioner's trial attorneys thought that his claim of self-defense was viable, and they told him that, thus causing him to want to proceed to trial, despite the fact that there actually was no viable self-defense position that could have been raised and that such a defense was "absurd" on the facts of this case. Although we agree with the petitioner that both Cohen and Davila testified that they thought the petitioner had a viable claim of self-defense, which proved not to be successful, we agree with the habeas court that counsel adequately informed the petitioner regarding the charges against him and the merits of the state's case and the petitioner's claim of self-defense, including the fact that the jury had to believe that the petitioner's use of force was not excessive and was reasonable under the circumstances.

"Prior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered. Determining whether an accused is guilty or innocent of the charges in a complex legal indictment is seldom a simple and easy task for a layman, even though acutely intelligent." *Von Moltke* v. *Gillies*, 332 U.S. 708, 721, 68 S. Ct. 316, 92 L. Ed. 309 (1948). "A defense lawyer in a criminal case has the duty to advise his client fully on whether a particular plea to a charge appears to be desirable." (Internal quotation marks omitted.) *Boria* v. *Keane*, 99 F.3d 492, 496 (2d Cir. 1996), cert. denied, 521 U.S. 1118, 117 S. Ct. 2508, 138 L. Ed. 2d 1012 (1997), citing Model Code of Professional Responsibility, Ethical Consideration 7-7 (1992).

In *Boria*, a case relied on by the petitioner, the United States Court of Appeals for the Second Circuit reversed the District Court's decision denying a habeas petition after it determined that counsel's failure to advise his client that he had a slim chance of success at trial, and that counsel thought a trial was "suicidal"; *Boria* v. *Keane*, supra, 99 F.3d 497; constituted ineffective assistance of counsel, creating a reasonable probability that the results of the proceedings would have been different under *Strickland* had counsel been effective. Id., 495–99. In *Purdy* v. *United States*, 208 F.3d 41, 48 (2d Cir. 2000), the Second Circuit explained that several cases had misread *Boria* and improperly had concluded that it had adopted a per se rule: "[W]e think it unwise to read *Boria* to have established a per se rule that defense counsel must always expressly advise the defendant whether to take a plea offer." The court went on to hold that performance is not deficient if counsel informed his client "fully of the strength of the government's case against him, together with the nature of the government's plea offer, without specifically advising [the client] to take the plea." Id.; see also *Edwards* v.

*Commissioner of Correction,* 87 Conn. App. 517, 524, 865 A.2d 1231 (2005).

"On the one hand, defense counsel must give the client the benefit of counsel's professional advice on this crucial decision of whether to plead guilty. . . . As part of this advice, counsel must communicate to the defendant the terms of the plea offer . . . and should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed . . . . On the other hand, the ultimate decision whether to plead guilty *must be made by the defendant.* . . . And a lawyer must take care not to coerce a client into either accepting or rejecting a plea offer. . . . Counsel's conclusion as to how best to advise a client in order to avoid, on the one hand, failing to give advice and, on the other, coercing a plea enjoys a wide range of reasonableness because [r]epresentation is an art . . . and [t]here are countless ways to provide effective assistance in any given case . . . . Counsel rendering advice in this critical area may take into account, among other factors, the defendant's chances of prevailing at trial, the likely disparity in sentencing after a full trial as compared to a guilty plea (whether or not accompanied by an agreement with the government), whether defendant has maintained his innocence, and the defendant's comprehension of the various factors that will inform his plea decision." (Citations omitted; emphasis added; internal quotation marks omitted.) *Purdy* v. *United States,* supra, 208 F.3d 44–45; *Edwards* v. *Commissioner of Correction,* supra, 87 Conn. App. 524–25.

In the present case, the habeas court found the following uncontested relevant facts. Davila had entered into pretrial plea negotiations with the state in an attempt to resolve the charge against the petitioner. The resolution proposed by the state would have

required the petitioner to plead guilty to assault in the second degree[4] in exchange for a sentence of ten years imprisonment, execution suspended after four years, and it would have allowed the petitioner to argue for a lesser sentence. The court also found that Davila conveyed this offer to the petitioner and advised him that it would be unlikely that he would be able to receive a sentence that fully was suspended. Davila also discussed with the petitioner *the merits of the state's case against the petitioner, "including a detailed discussion of the defense of self-defense . . . ."* (Emphasis added.) The court further found that the petitioner stressed his innocence of the charge and that he was adamant that he wanted to go to trial because he had a "viable and valid self-defense claim . . . ." Finally, the court found that the plea offer *"had been properly conveyed and explained to the petitioner."* (Emphasis added.)

These findings support the court's decision that both counsel were not deficient and that they fully advised the petitioner concerning the state's plea offer and the petitioner's self-defense claim. These findings are further supported by our own review of the record and the testimony of Davila and Cohen. They both repeatedly stated that they fully informed the petitioner of the risks associated with trial and that the jury had to believe that the force used by the petitioner in defending himself was reasonable in order to find him not guilty. Davila testified that he fully discussed the state's plea offer with the petitioner and that he informed the petitioner that the jury could find that the amount of force used by him was excessive and that he could be convicted on that basis. Cohen testified that he fully discussed the elements of assault in the first degree with the petitioner, and that he explained that the injury to the victim was a serious physical injury and that the

---

[4] See footnote 1 of this opinion.

beer bottle could be defined as a deadly weapon or a dangerous instrument. Cohen also testified that he explained the elements of self-defense to the petitioner and that the jury would have to believe that the petitioner had acted reasonably in hitting the victim with the beer bottle. Both counsel stated that the petitioner continually asserted his innocence and was adamant that he wanted to go to trial.[5] Furthermore, the petitioner, himself, testified that Cohen had given him a copy of the statutes concerning the use of reasonable force and deadly force. See General Statutes §§ 53a-18 and 53a-19.[6]

The petitioner also argues that counsel failed to inform him that his claim of self-defense was not a good defense because the jury could have believed everything the petitioner said and still have found that the force he used was unreasonable in light of the danger he faced. Issues of weight and credibility of evidence, however, are inherent in any factually based claim or defense and are determined by the trier of fact both during a trial and in a habeas hearing.[7] Furthermore, in this case, counsel explained to the petitioner that a

[5] For example, Cohen testified in relevant part: "Based on my discussions with [the petitioner], the history of the case, and all of these factors, including what I knew of the case and the evidence that had been presented, I don't believe that I could have said or done anything that would have made him take the offer. It's not what he wanted to do, and that's why he fired [Davila] and that's why he came to me—not to try to persuade him to take a plea agreement, but to go to trial." Cohen also testified that the petitioner "was hell-bent on not taking an offer and [on] going to trial."

[6] We note that the trial court instructed the jury on the use of deadly physical force.

[7] "A fundamental element of due process is the right of a defendant charged with a crime to establish a defense. . . . It is for the jury to evaluate the credibility of the witnesses and the weight to be accorded the evidence. . . . The jury is free to juxtapose conflicting versions of events and to determine which is more credible. . . . [T]he [jury] can disbelieve any or all of the evidence . . . and can construe [the] evidence in a manner different from the parties' assertions." (Citations omitted; internal quotation marks omitted.) *State* v. *Person*, 236 Conn. 342, 347, 673 A.2d 463 (1996).

jury would have to believe that the force that the peti-
tioner had used was not excessive and was reasonable
for his claim of self-defense to be successful.

"General Statutes § 53a-19 (a) provides in relevant
part: [A] person is justified in using reasonable physical
force upon another person to defend himself . . . from
what he reasonably believes to be the use or imminent
use of physical force, and he may use such degree of
force which he reasonably believes to be necessary for
such purpose; except that deadly physical force may
not be used unless the actor reasonably believes that
such other person is (1) using or about to use deadly
physical force, or (2) inflicting or about to inflict great
bodily harm." (Internal quotation marks omitted.) *State*
v. *Singleton*, 292 Conn. 734, 746, 974 A.2d 679 (2009).

"Under General Statutes § 53a-19 (a), a person can,
under appropriate circumstances, justifiably exercise
. . . deadly force if he reasonably believes both that
his attacker is using or about to use deadly force against
him and that deadly force is necessary to repel such
attack. . . . The Connecticut test for the degree of
force in self-defense is a subjective-objective one. The
jury must view the situation from the perspective of
the defendant. Section 53a-19 (a) requires, however,
that the defendant's belief ultimately must be found to
be reasonable." (Citation omitted; internal quotation
marks omitted.) *State* v. *Carter*, 232 Conn. 537, 546, 656
A.2d 657 (1995).

"[A] claim of self-defense is a justification defense.
A justification defense represents a legal acknowledg-
ment that the harm caused by otherwise criminal con-
duct is, under special justifying circumstances,
outweighed by the need to avoid an even greater harm
or to further a greater societal interest. . . . [Thus], in
the case of self-defense, [s]ociety's interest in the right
to bodily integrity, when combined with the physical

harm threatened [by an aggressor], outweighs the normal prohibition against the physical injury needed to deter such an aggressor." (Citation omitted; internal quotation marks omitted.) *State* v. *Singleton*, supra, 292 Conn. 748–49.

In this case, the petitioner testified at the habeas trial as follows: that he was five feet, seven inches tall, and that the victim was six feet, three inches tall, a much bigger man than was the petitioner; that the victim was choking him and he could not breathe; that the victim was lifting him off the floor; that he was getting weak and dizzy and losing consciousness; that he was in a corner, blocked in by people and furniture and could not retreat; that he feared for his life; and that, therefore, he defended himself. Although the defense proved to be unsuccessful at trial, we cannot conclude on the basis of the facts as asserted by the petitioner that he had no viable possibility to establish that his use of the beer bottle to defend himself was justified under the facts and circumstances of this case. See id.

If the jury believed the facts as set forth by the petitioner during his habeas trial—that he was being attacked by another man, eight inches taller than the petitioner, that the attacker was athletic in build and was lifting the petitioner off the floor while choking him to the point of near unconsciousness and that the petitioner had no means of escape because the attacker had him in a corner surrounded by furniture and people, it would not have been unreasonable for the jury to have found that the petitioner was justified in acting in self-defense by using the beer bottle to stop the attack. There is nothing in our law that would prohibit such a finding, and it would not have been unreasonable for the jury to have made such a finding in light of the petitioner's version of events. The petitioner's own criminal defense expert, John Watson, a former public defender, although stating that he did not think that

the defense was a good defense, testified that it was "colorable."[8] In this case, the evidence supports the court's conclusion that the petitioner failed to meet his burden of proof that both counsel were ineffective.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[8] "Colorable" is defined as "appearing to be true, valid, or right . . . ." Black's Law Dictionary (8th Ed. 2004).