******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# WILLIAM BETTS *v.* COMMISSIONER
# OF CORRECTION
## (AC 40587)

DiPentima, C. J., and Sheldon and Pellegrino, Js.

*Syllabus*

The petitioner, who had been convicted of, inter alia, risk of injury to a
child, sought a writ of habeas corpus, claiming, inter alia, that his criminal
trial counsel had provided ineffective assistance. The habeas court ren-
dered judgment denying the habeas petition, from which the petitioner,
on the granting of certification, appealed to this court. *Held:*

1. The petitioner's claim that his trial counsel did not give him adequate
   advice concerning the state's pretrial plea offer was unavailing:
   a. The habeas court correctly determined that the petitioner failed to
   establish that he was not advised of the maximum penalties for his
   pending charges or of his maximum exposure to punishment if he were
   found guilty on all charges, as neither the petitioner nor trial counsel
   recalled if they discussed the minimum and maximum penalties for each
   charge or his cumulative maximum exposure on all charges during their
   conversations about the plea offer, and, thus, the petitioner failed to
   establish that no such conversation had occurred, and the record was
   insufficient to support a finding that he met his burden to overcome the
   presumption that his trial counsel provided competent representation;
   moreover, the record supported the habeas court's conclusion that trial
   counsel had advised the petitioner as to the maximum possible penalties
   for all of the felony charges he faced, and the court, in rejecting the
   petitioner's claim that trial counsel had misadvised him about the poten-
   tial penalties he might face, made a credibility based, factual determina-
   tion regarding trial counsel's testimony that this court would not disturb
   on appeal.
   b. The petitioner could not prevail on his claim that his trial counsel
   rendered ineffective assistance by failing to advise him adequately as
   to the strength of the state's case against him: the habeas court found
   that trial counsel had advised the petitioner about the strength of the
   state's case, discussed with him the unlikely prospect of acquittal, and
   advised him that he should enter a guilty plea rather than proceed to
   trial, and those findings were supported by the record and the petitioner's
   testimony, in which he admitted that trial counsel had explained to him
   the pending charges and described what the state would need to prove
   in order to convict him, which witnesses it would likely call and what
   other evidence the state would likely offer at trial, including an inculpa-
   tory letter in which the petitioner described his sexual desire for the
   minor victim; accordingly, the habeas court appropriately concluded
   that trial counsel's explanation to the petitioner that the letter and
   eyewitness testimony of the victim's mother would be introduced by
   the state at trial was sufficient to inform the petitioner of the strength
   of the state's case against him.

2. The habeas court properly concluded that the petitioner was not preju-
   diced by trial counsel's allegedly inadequate advice in connection with
   the state's pretrial plea offer; that court credited trial counsel's testimony
   that the petitioner was adamant that his case be taken to trial rather
   than be resolved by a guilty plea because the petitioner was concerned
   about the collateral consequences of a third conviction for alleged sexual
   contact with a minor, which the petitioner feared would result in the
   violation of his probations for similar offenses, and the court properly
   declined to rely on the petitioner's testimony either that he was not
   properly advised by counsel, or that he probably would have accepted
   the state's offer had he been given adequate advice, as the petitioner's
   testimony was equivocal at best and fell short of establishing that even
   if trial counsel's advice was inadequate, such advice prejudiced him by
   causing him not to accept a proposed guilty plea.

Argued December 6, 2018—officially released March 12, 2019

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Oliver, J.*; judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*Deren Manasevit*, assigned counsel, for the appellant (petitioner).

*Nancy L. Chupak*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *David Carlucci*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

SHELDON, J. The petitioner, William Betts, appeals from the judgment of the habeas court denying his amended petition for a writ of habeas corpus, in which he claimed that trial counsel in his underlying criminal prosecution rendered ineffective assistance by giving him constitutionally inadequate advice concerning the state's pretrial plea offer to recommend a lesser sentence in exchange for his guilty plea to certain charges, which he rejected before the start of trial. On appeal, the petitioner claims that the habeas court erred in ruling that (1) trial counsel did not give him inadequate advice concerning the state's pretrial plea offer, and (2) he was not prejudiced by such allegedly inadequate advice in connection with that offer. We disagree with both of the petitioner's claims and, therefore, affirm the judgment of the habeas court.

On May 19, 2005, the petitioner was convicted, after a jury trial, of one count each of risk of injury to a child in violation of General Statutes § 53-21 (a) (1), sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1) (a), assault in the third degree in violation of General Statutes § 53a-61, and interfering with an emergency call in violation of General Statutes § 53a-183b, and of two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2). On July 12, 2005, the petitioner was sentenced on his conviction of those charges, together with two resulting violations of probation to which he had pleaded guilty, to a total effective sentence of forty-three years incarceration, execution suspended after twenty-three years, followed by thirty-five years of probation. The petitioner appealed his conviction, which was affirmed by our Supreme Court on March 18, 2008. See *State* v. *Betts*, 286 Conn. 88, 942 A.2d 364 (2008).

The following facts, as described by our Supreme Court in its decision on the petitioner's direct appeal, are relevant to our disposition of this appeal. "On February 29, 2004, A.L.,[1] the thirteen year old victim, visited the home of T.H., her mother, as she did typically once every other week. During that visit, A.L. and the [petitioner], who was T.H.'s fiancé, watched television together in the living room while T.H. slept in a downstairs bedroom that she shared with the [petitioner]. A.L., who initially was sitting on the floor, then moved to [lie] down on the couch, at which time the [petitioner] put his hand in her shirt and touched her breasts before moving his hand down to rub her 'privates' with his right hand. A.L. told the [petitioner] to stop touching her or else she would kick him, and then started to bang on the floor to wake T.H. The [petitioner] stopped briefly, but then lay on top of A.L. and continued to touch her and grab her breasts with even more force.

"At that time, T.H. entered the room, witnessed the

[petitioner] lying on top of A.L., and began to yell at both of them; T.H. then ran downstairs intending to call the police. Thereafter, an argument ensued between T.H. and the [petitioner], at which point he called A.L. into the room and asked her to say that nothing had happened between them. A.L. complied with the [petitioner's] request and then left the room, at which point T.H. and the [petitioner] started arguing again about who was lying. At that point, A.L., who had overheard the conversation, became angry, returned to the room and told the [petitioner] to tell T.H. the truth. A.L. then told T.H. that the [petitioner] had 'rap[ed]' and 'sexually harass[ed]' her.

"T.H. then went back down to the bedroom to call the police. The [petitioner] followed her downstairs and began to choke, beat and spit on her. A.L. also tried to call the police, but was unable to do so because the telephone in the room was disconnected. The [petitioner] then stopped choking T.H., and she left the bedroom. At this time, A.L. gave T.H. a letter that the [petitioner] had written expressing his sexual desire for A.L. The [petitioner] then took the letter and hid it in the bedroom that T.H. and the [petitioner] shared before T.H. could read it.

"Thereafter, the police arrived at the house, and T.H. then gave the letter to Robin Gibson, a Manchester police officer who had responded to her call for help. Subsequently, the [petitioner] was arrested and charged with numerous counts of risk of injury to a child, sexual assault in the third degree, assault in the third degree, unlawful restraint in the first degree and interfering with an emergency call." (Footnotes omitted.) *State* v. *Betts*, supra, 286 Conn. 90–92.

The petitioner commenced this habeas corpus action on December 11, 2014, challenging the effectiveness of trial counsel in his underlying criminal prosecution. After a two day trial, the habeas court issued a memorandum of decision in which it made the following relevant factual findings. The petitioner was represented at trial by Attorney Bruce Lorenzen. Prior to trial, the state extended an offer to the petitioner that it would recommend a sentence of twenty years incarceration, execution suspended after eight years, followed by twenty years of probation, reserving to the petitioner the right to argue for a fully suspended sentence, if he would plead guilty to the principal charges then pending against him. The petitioner testified that during his discussions with Lorenzen concerning the state's offer, Lorenzen had explained to him each of the charges he was facing, the elements of those charges, and the evidence that would likely be adduced at trial to establish those elements.

The petitioner also testified that Lorenzen had discussed with him the terms of the state's offer and his own decision whether to go to trial. He claimed that

he had rejected the offer because Lorenzen had told him that if he went to trial, the worst case scenario he would face in the event of a conviction would be a sentence of fifteen years incarceration. Importantly, the petitioner testified that he could not recall if Lorenzen had ever explained to him the minimum and maximum sentences he could receive for each offense with which he was charged. He expressed certainty, however, that Lorenzen had never informed him of the maximum exposure he would face if he were convicted of all charges and given the maximum possible consecutive sentence on each. He told the court that if he had known what his total exposure would be, he "probably would have" accepted the state's offer.

The petitioner conceded that Lorenzen had reviewed with him the letter that he had written to the minor victim, expressing his sexual desire for her, and discussed with him the negative impact that that letter had on his defense in the case. He also conceded that the trial court conducted a canvass of him regarding the plea offer before he rejected it. Finally, at the end of the petitioner's testimony, the habeas court questioned him directly to determine if he could remember whether Lorenzen had advised him of the maximum penalty for each of the charges he was facing, and of any mandatory minimum penalties. The petitioner responded that he could not recall if Lorenzen had so advised him.

As summarized by the habeas court in its memorandum of decision, Lorenzen testified that he too could not recall if he had ever explained to the petitioner the maximum penalties he would face if he were convicted on his pending misdemeanor charges at trial. He was certain, however, that he had explained to the petitioner the maximum penalties he would face on each of his pending felony charges. Lorenzen's exact language, when asked if he had explained to the petitioner the minimum and maximum penalties for each charge, was, "I don't necessarily recall walking him through one by one, particularly the lesser charges, but there was definitely discussion in terms of if you were convicted of the sex one, sex three, risk of injury, those are all serious charges, carry significant time, we're going to wind up in a place that's more than the offer." Lorenzen remembered presenting the plea offer to the petitioner on more than one occasion and explaining to him on each of those occasions the difficulties he would have of prevailing at trial, particularly on the risk of injury charges, which he considered the most difficult charges to defend against in the underlying prosecution. Lorenzen denied telling the petitioner that he would face, at worst, a sentence of fifteen years incarceration if he were convicted at trial, and insisted that he had always advised the petitioner that accepting the state's offer would be in his best interest. Lorenzen finally noted that the petitioner was adamant about rejecting the plea offer and going to trial because he was concerned that

otherwise he would be found to have violated his probations, both of which had been imposed upon him in connection with prior incidents involving sexual contact with minors. Lorenzen recalled that the petitioner's primary concern was that he not "be seen as a sex offender," as he believed he would be if he were convicted of a third sexually related offense.

The court ruled, on the basis of this evidence that the petitioner had failed to establish that Lorenzen's performance was constitutionally deficient because he had failed to prove that Lorenzen did not review with him the potential penalties he would face in the event of conviction, either separately or cumulatively. The court also ruled that Lorenzen had fully complied with his obligations as a reasonably competent defense attorney by advising the petitioner during plea negotiations during several judicial pretrials, advising him of the strength of the state's case, and advising him that he should enter a plea rather than proceed to trial. Finally, the court ruled that the petitioner had failed to establish prejudice, for it credited Lorenzen's testimony that the petitioner was adamant about not pleading guilty but going to trial. The court therefore concluded that the petitioner had failed to overcome the presumption of competent representation to establish deficient performance and failed to establish prejudice. Accordingly, the court denied the petitioner's amended petition for writ of habeas corpus. On June 8, 2017, the court granted the petitioner's petition for certification to appeal, and this appeal followed.

We begin by setting forth our standard of review. "The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review." (Internal quotation marks omitted.) *Horn* v. *Commissioner of Correction*, 321 Conn. 767, 775, 138 A.3d 908 (2016).

The legal principles that govern an ineffective assistance claim are well settled. See *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "A claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . The second prong is . . . satisfied if the petitioner can demonstrate that there is a reasonable probability that, but for that ineffectiveness, the outcome would have been different." (Citation omitted; internal quotation marks omitted.) *Horn* v. *Commissioner of Correction*, supra, 321 Conn. 775–76.

Regarding the performance prong, "[j]udicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Internal quotation marks omitted.) *Spearman* v. *Commissioner of Correction*, 164 Conn. App. 530, 539, 138 A.3d 378, cert. denied, 321 Conn. 923, 138 A.3d 284 (2016).

With these principles in mind, we turn to petitioner's argument that trial counsel rendered ineffective assistance by failing to advise him adequately concerning the state's guilty plea offer. Specifically, he claims that trial counsel did not advise him of the maximum possible penalty he could receive if he were convicted of each of his pending charges or of his maximum possible exposure to punishment if he were convicted of all such charges and sentenced to the maximum possible penalty on each, to be served consecutively. To the contrary, he claims that his counsel incorrectly advised him that the worst sentence he would receive if he were convicted at trial was a term of fifteen years incarceration. The petitioner further argues that counsel failed to advise him adequately as to the strength of the state's case. We disagree.

The petitioner first argues that counsel failed to explain to him the minimum and maximum penalties for each of the charges he faced as well as his total maximum exposure to punishment if he were convicted at trial. The petitioner's "awareness of the maximum sentence possible is an essential factor in determining whether to plead guilty . . . ." *State* v. *Childree*, 189 Conn. 114, 126, 454 A.2d 1274 (1983). Indeed, Practice Book § 39-19 provides in relevant part: "The judicial authority shall not accept the plea without first addressing the defendant personally and determining that he or she fully understands . . . (4) [t]he maximum possible sentence on the charge, including, if there are several charges, the maximum sentence possible from consecutive sentences and including, when applicable, the fact that a different or additional punishment may be authorized by reason of a previous conviction . . . ."

We agree with the habeas court that the petitioner failed to establish that he was not advised of the maximum penalties for each of his pending charges or of his maximum exposure to punishment if he were found guilty on all charges. Neither the petitioner nor trial

counsel could recall if they discussed the minimum and maximum penalties for each such charge or his cumulative maximum exposure on all charges during their conversations about the plea offer. Accordingly, the court found that the petitioner had failed to establish that no such conversation had occurred, as the only evidence that was submitted on this issue was that neither the petitioner nor trial counsel could recall, after a period of thirteen years, if it had occurred. Therefore, the record was insufficient to support a finding that the petitioner met his burden to overcome the presumption that Lorenzen had provided competent representation in order to meet the performance prong of *Strickland*.

The petitioner also argues that the court erred in crediting Lorenzen's testimony that he was certain that he had advised the petitioner as to the maximum possible penalties for all of the felony charges he faced, which he claims to be clearly erroneous. "A court's determination is clearly erroneous only in cases in which the record contains no evidence to support it, or in cases in which there is evidence, but the reviewing court is left with the definite and firm conviction that a mistake has been made." (Internal quotation marks omitted.) *Considine* v. *Waterbury*, 279 Conn. 830, 858, 905 A.2d 70 (2006). That is simply not the case here. The record supports the court's conclusion that Lorenzen discussed with the petitioner the penalties associated with his felony charges, as established by Lorenzen's testimony that "there was definitely discussion in terms of if you were convicted of the sex one, sex three, risk of injury, those are all serious charges, carry significant time . . . ." The petitioner's argument that he was misadvised about the potential penalties he might face must also fail. On this score, the court credited Lorenzen's testimony that he had never advised the petitioner that the worst sentence he would receive if he were convicted at trial was a term of fifteen years incarceration. This was a credibility based factual determination that this court will not disturb on appeal.

The petitioner next argues that trial counsel rendered ineffective assistance by failing adequately to advise him as to the strength of the state's case against him, which assertedly impacted his decision to reject the state's guilty plea offer. The petitioner argues that trial counsel was required to tell him that his conviction was a near certainty and that counsel's advice that taking the plea was in his best interest was inadequate to express the strength of the state's case. We disagree.

"As to the parameters of counsel's advice to a defendant, this court, in *Vasquez* v. *Commissioner of Correction*, 123 Conn. App. 424, 437, 1 A.3d 1242 (2010), cert. denied, 302 Conn. 901, 23 A.3d 1241 (2011), commented: Prior to trial an accused is entitled to rely upon his counsel to make an independent examination of the

facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered. Determining whether an accused is guilty or innocent of the charges in a complex legal indictment is seldom a simple and easy task for a layman, even though acutely intelligent. . . . A defense lawyer in a criminal case has the duty to advise his client fully on whether a particular plea to a charge appears to be desirable. . . .

"In *Vasquez*, this court said, as well: On the one hand, defense counsel must give the client the benefit of counsel's professional advice on this crucial decision of whether to plead guilty. . . . As part of this advice, counsel must communicate to the defendant the terms of the plea offer . . . and should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed. . . . On the other hand, the ultimate decision whether to plead guilty must be made by the defendant. . . . And a lawyer must take care not to coerce a client into either accepting or rejecting a plea offer. . . . Counsel's conclusion as to how best to advise a client in order to avoid, on the one hand, failing to give advice and, on the other, coercing a plea enjoys a wide range of reasonableness because [r]epresentation is an art . . . and [t]here are countless ways to provide effective assistance in any given case. . . . Counsel rendering advice in this critical area may take into account, among other factors, the defendant's chances of prevailing at trial, the likely disparity in sentencing after a full trial as compared to a guilty plea (whether or not accompanied by an agreement with the government), whether defendant has maintained his innocence, and the defendant's comprehension of the various factors that will inform his plea decision." (Citations omitted; internal quotation marks omitted.) *Peterson* v. *Commissioner of Correction*, 142 Conn. App. 267, 273–74, 67 A.3d 293 (2013).

In support of his position, the petitioner compares trial counsel's advice in this case to that of trial counsel in *Lane* v. *Commissioner of Correction*, 129 Conn. App. 593, 20 A.3d 1265, cert. denied, 302 Conn. 915, 27 A.3d 368 (2011). In *Lane*, trial counsel had advised the petitioner that he had a "fifty-fifty chance" of winning at trial despite the state's very strong case that included three eyewitnesses because counsel, who believed that "you never know what a jury is going to do," had not recommended to the petitioner that he accept the plea offer. (Internal quotation marks omitted.) Id., 597–98. The court found that the challenged advice fell below an objective standard of reasonableness. Id., 597. The deficient advice given to the petitioner in *Lane* by his trial counsel is clearly distinguishable from that given to the petitioner in the present case by Lorenzen in the prosecution here at issue. Here, unlike his counterpart in *Lane*, Lorenzen encouraged the petitioner to accept

the state's offer, noting that it was in his best interest to do so. Lorenzen also discussed the difficulties of prevailing at trial, particularly on the risk of injury to a minor charges, which he described as the most difficult to defend against.

The petitioner also cites *Vasquez* v. *Commissioner of Correction*, supra, 123 Conn. App. 424, in support of this argument. In *Vazquez*, this court found that the petitioner's trial counsel's representation was not deficient where counsel fully discussed the state's plea offer with the petitioner as well as the elements of each charged offense and the evidence in the case that would likely be presented at trial to prove each such element. Id., 439–40. Here as well, the court found that Lorenzen advised the petitioner about the strength of the state's case, discussed with him the unlikely prospect of acquittal, and advised him that he should enter a guilty plea rather than proceed to trial. These findings are supported by our own review of the record and the petitioner's own testimony, in which he admitted that Lorenzen had explained the pending charges to him, and had described what the state would need to prove in order to convict him, which witnesses it would likely call for that purpose, and what other evidence the state would likely offer against him at trial, including, particularly, the inculpatory letter in which he described his sexual desire for the minor victim. The habeas court appropriately concluded that Lorenzen's explanation to the petitioner that that damning letter and the eyewitness testimony of the victim's mother would be introduced against him at trial was sufficient to inform the petitioner of the strength of the state's case against him. For the foregoing reasons, we conclude that the habeas court did not err in finding that the petitioner failed to establish that Lorenzen's advice regarding the state's guilty plea offer was constitutionally inadequate.

The petitioner next claims that the habeas court erred in ruling that he was not prejudiced by counsel's allegedly inadequate advice concerning the state's plea offer. In support of this argument, the petitioner reiterates his arguments as to counsel's allegedly deficient performance and contends that we must assess his expressed insistence upon going to trial in light of Lorenzen's allegedly inadequate advice concerning the potential costs and benefits of entering the proposed plea. We agree with the habeas court that the petitioner did not prove that he was prejudiced by Lorenzen's allegedly inadequate advice.

"Pretrial negotiations implicating the decision of whether to plead guilty is a critical stage in criminal proceedings . . . and plea bargaining is an integral component of the criminal justice system and essential to the expeditious and fair administration of our courts. . . .

"To show prejudice from ineffective assistance of

counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law. To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." (Internal quotation marks omitted.) *Mahon* v. *Commissioner of Correction*, 157 Conn. App. 246, 253–54, 116 A.3d 331, cert. denied, 317 Conn. 917, 117 A.3d 855 (2015).

In the present case, the habeas court credited Lorenzen's testimony that the petitioner was adamant that his case be taken to trial rather than be resolved by a guilty plea because he was concerned about the collateral consequences of a third conviction based on alleged sexual contact with a minor, which he feared would result in the violation of his probations for similar offenses. In so doing, the court declined to rely on the petitioner's testimony either that he was not properly advised by counsel, as discussed previously, or that he "probably" would have accepted the state's offer had he been given such proper advice. As for the petitioner's latter claim, in particular, the habeas court duly noted that the petitioner's testimony was equivocal at best, falling short of establishing that even if Lorenzen's advice was inadequate, which the court had already rejected, such advice had prejudiced the petitioner by causing him not to accept a proposed guilty plea, which it was in his best interest to accept. In light of these factual findings as to the true reasons for the petitioner's decision to reject the state's plea offer and go to trial, the habeas court did not err in ruling that the petitioner failed to establish that he was prejudiced by the allegedly deficient performance of his trial counsel.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.