STEWART PETERSON *v.* COMMISSIONER
OF CORRECTION
(AC 33917)

Beach, Alvord and Bishop, Js.

Argued January 23—officially released April 30, 2013

*Temmy Ann Pieszak*, chief of habeas corpus services, with whom, on the brief, was *Rebecca I. Bodner*, assistant public defender, for the appellant (petitioner).

*Timothy J. Sugrue*, assistant state's attorney, with whom, on the brief, were *Kevin T. Kane*, chief state's attorney, and *Marcia A. Pillsbury*, deputy assistant state's attorney, for the appellee (respondent).

*Opinion*

BISHOP, J. In this certified appeal from the judgment denying a petition for a writ of habeas corpus, the petitioner, Stewart Peterson, claims that the court: (1) applied an improper legal standard in assessing the effectiveness of his trial counsel regarding the duty to adequately explain a plea offer from the state; (2) incorrectly assessed the effectiveness of his trial counsel regarding the duty to secure pretrial detention credit with respect to other charges then pending against the petitioner; and (3) improperly decided facts before the close of evidence.[1] We affirm the judgment of the habeas court.

The habeas court's memorandum of decision contains a helpful recitation of the relevant factual and procedural background of this habeas matter. The court found that "[t]he petitioner was the defendant in a criminal case in the judicial district of Danbury under docket number CR-06-0125329 in which he was charged with criminal possession of a weapon in violation of General

---

[1] The petitioner claims, as well, that the habeas trial evidence irrefutably demonstrates that his trial counsel was ineffective. Our response to this claim is included in our treatment of the petitioner's claim regarding the standard applied by the court in assessing his habeas claim.

Statutes § 53a-217, illegal possession of a weapon in a motor vehicle in violation of General Statutes § 29-38, possession of narcotics in violation of General Statutes § 21a-279 (a), and possession of an illegal substance by a nonstudent within 1500 feet of a school in violation of . . . § 21a-279 (d). . . .

"About one month later, while out on bond on the weapons and narcotics charges, the petitioner was again arrested and in docket number CR-06-0125803 was charged with two counts of possession of narcotics in violation of General Statutes § 21a-279a, sale of illegal drugs in violation of General Statutes § 21a-278 (b), possession of drug paraphernalia in violation of General Statutes § 21a-267 (a), and violation of traffic control signals in violation of General Statutes § 14-299. . . . The petitioner was represented in both matters by attorney Joseph Dimyan. . . .

"On August 2, 2006, the prosecutor made the petitioner an offer that would have disposed of both cases with a total effective sentence of seven years suspended after three, with probation following. The petitioner was given until September 20, 2006, to consider the offer. The petitioner rejected the offer and the cases were placed on the firm jury docket on September 27, 2006. . . .

"On October 23, [2006] while awaiting trial, the petitioner was again arrested and in docket number CR-06-0127604 he was charged with two counts of possession of narcotics in violation of . . . § 21a-279 (a), possession of drug paraphernalia in violation of . . . § 21a-267 (a), sale of illegal drugs in violation of . . . § 21a-278 (b), possession of a controlled substance in violation of . . . § 21a-279 (c), and operating [a motor vehicle while his license was] under suspension in violation of General Statutes § 12-215. . . .

"The petitioner then proceeded to a jury trial on CR-06-0125329 and was convicted of criminal possession of a weapon and illegal possession of a weapon in a motor vehicle, and was found not guilty of the remaining charges.

"On January 17, 2007, the trial court, *Thim, J.*, sentenced the petitioner to five years to serve on each charge to run consecutively with each other, for a total effective sentence of ten years to serve. . . .

"Also on January 17, 2007, the petitioner [pleaded] guilty and was sentenced on both of his remaining criminal files. In CR-06-0125803, the petitioner pleaded guilty to one count of possession of narcotics and the trial court, *Mintz, J.*, sentenced him to seven years to be served concurrently with the sentenced imposed in CR-06-0125329. In CR-06-0127604, the petitioner pleaded guilty to one count of possession of narcotics and was sentenced to three years, to be served consecutively to the sentence he received in CR-06-0125803 and concurrently to the sentence he received in CR-06-0125329, for a total effective sentence of ten years concurrent with the ten year sentence imposed after trial in CR-06-0125329."

On February 3, 2011, the petitioner filed an amended petition for a writ of habeas corpus, in which he alleged that he had been deprived of his constitutional right to the effective assistance of counsel in the underlying criminal proceedings, on the ground that Dimyan had failed to advise him adequately in regard to the state's plea offer in docket numbers CR-06-0125329 and CR-06-0125803. He also alleged that Dimyan had been ineffective by failing to ask the court to set bond on the files on which he was arrested while already in custody, thus depriving him of the benefit of pretrial detention credits on the later charged files to which he subsequently pleaded guilty. The trial of this habeas matter

took place on March 11, 2011. After hearing the evidence and receiving posttrial briefs from counsel, the court issued its memorandum of decision on August 25, 2011, denying the petition. On September 9, 2011, the habeas court granted the petitioner's petition for certification to appeal. This appeal followed.

Opinions from the United States Supreme Court and our Supreme Court guide our analytical path. "When reviewing the decision of a habeas court, the facts found by the habeas court may not be disturbed unless the findings were clearly erroneous. . . . The issue, however, of [w]hether the representation [that] a defendant received at trial was constitutionally inadequate is a mixed question of law and fact. *Strickland* v. *Washington*, [466 U.S. 668, 698, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)]. As such, that question requires plenary review by this court unfettered by the clearly erroneous standard. . . . Under the *Strickland* test, when a petitioner alleges ineffective assistance of counsel, he must establish that (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance. . . . Furthermore, because a successful petitioner must satisfy both prongs of the *Strickland* test, failure to satisfy either prong is fatal to a habeas petition. . . .

"To satisfy the first prong, that his counsel's performance was deficient, the petitioner must establish that his counsel made errors so serious that [counsel] was not functioning as the counsel guaranteed the [petitioner] by the Sixth Amendment. . . . The petitioner must thus show that counsel's representation fell below an objective standard of reasonableness considering all of the circumstances. . . . [A] court must indulge a strong presumption that counsel's conduct falls within

the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. [Id.] 689. Furthermore, the right to counsel is not the right to perfect counsel." (Citations omitted; internal quotation marks omitted.) *Axel D.* v. *Commissioner of Correction,* 135 Conn. App. 428, 432–33, 41 A.3d 1196 (2012).

"To determine whether trial counsel's performance fell below an objective standard of reasonableness and whether the petitioner was therefore prejudiced, we must consider the nature of the underlying claim." Id. Although there had been some debate about whether the constitutional right to the effective assistance of counsel applies to the rejection of a plea offer by the government, it is now well settled that a criminal defendant has the right to the effective assistance of counsel in conjunction with the acceptance or rejection of a plea offer. See *Missouri* v. *Frye,* U.S. , 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012) (establishing right to effective assistance leading to rejection of plea offer); *Hill* v. *Lockhart,* 474 U.S. 52, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985) (establishing right to effective assistance leading to acceptance of plea offer).

Although affirming a defendant's constitutional right to the effective assistance of counsel at the plea negotiations stage of criminal proceedings, our courts have nevertheless been reluctant to elaborate on attorney behaviors that may or may not constitute ineffectiveness. In *Ebron* v. *Commissioner of Correction,* 120 Conn. App. 560, 572, 992 A.2d 1200 (2010), rev'd on other grounds, 307 Conn. 342, 53 A.3d 983 (2012), this court observed: "[P]lea bargaining is an integral component of the criminal justice system and essential to the expeditious and fair administration of our courts. . . . Commentators have estimated that between 80 and 90

percent of criminal cases in Connecticut result in guilty pleas, the majority of which are the product of plea bargains. . . . Thus, almost every criminal defendant is faced with the crucial decision of whether to plead guilty or proceed to trial. Although this decision is ultimately made by the defendant, the defendant's attorney must make an informed evaluation of the options and determine which alternative will offer the defendant the most favorable outcome. *A defendant relies heavily upon counsel's independent evaluation of the charges and defenses, applicable law, the evidence and the risks and probable outcome of a trial.* . . . Indeed, the United States Court of Appeals for the Second Circuit has described the decision to plead guilty as ordinarily the most important single decision in any criminal case. . . . *Boria* v. *Keane*, 99 F.3d 492, 496–97 (2d Cir. 1996), cert. denied, 521 U.S. 1118, 117 S. Ct. 2508, 138 L. Ed. 2d 1012 (1997). It further stated that [e]ffective assistance of counsel includes counsel's informed opinion as to what pleas should enter." (Citations omitted; emphasis in original; internal quotation marks omitted.)

As to the parameters of counsel's advice to a defendant, this court, in *Vazquez* v. *Commissioner of Correction*, 123 Conn. App. 424, 437, 1 A.3d 1242 (2010), cert. denied, 302 Conn. 901, 23 A.3d 1241 (2011), commented: "Prior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered. Determining whether an accused is guilty or innocent of the charges in a complex legal indictment is seldom a simple and easy task for a layman, even though acutely intelligent. . . . A defense lawyer in a criminal case has the duty to advise his client fully on whether a particular plea to a charge appears to be desirable." (Citation omitted; internal quotation marks omitted.)

In *Vazquez*, this court said, as well: "On the one hand, defense counsel must give the client the benefit of counsel's professional advice on this crucial decision of whether to plead guilty. . . . As part of this advice, counsel must communicate to the defendant the terms of the plea offer . . . and should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed . . . . On the other hand, the ultimate decision whether to plead guilty must be made by the defendant. . . . And a lawyer must take care not to coerce a client into either accepting or rejecting a plea offer. . . . Counsel's conclusion as to how best to advise a client in order to avoid, on the one hand, failing to give advice and, on the other, coercing a plea enjoys a wide range of reasonableness because [r]epresentation is an art . . . and [t]here are countless ways to provide effective assistance in any given case . . . . Counsel rendering advice in this critical area may take into account, among other factors, the defendant's chances of prevailing at trial, the likely disparity in sentencing after a full trial as compared to a guilty plea (whether or not accompanied by an agreement with the government), whether defendant has maintained his innocence, and the defendant's comprehension of the various factors that will inform his plea decision." (Internal quotation marks omitted.) Id., 438. With these statements of the applicable decisional law in mind, we turn, now, to the petitioner's claims of ineffectiveness of counsel.

I

The petitioner first claims that in assessing his claims regarding Dimyan's failure to advise him adequately in conjunction with the state's plea offer, the court utilized an improper standard.[2] We disagree.

---

[2] As part of the petitioner's claim that the habeas court applied the wrong standard in determining whether Dimyan's performance was deficient, he also argues the proper remedy where a petitioner proves that his counsel

In its memorandum of decision, the court characterized the plaintiff's claim as Dimyan's failure to persuade him to accept the state's offer and determined that, in fact, Dimyan did attempt to persuade the petitioner to accept the offer. The petitioner claims, and we agree, that counsel's obligations during plea negotiations extend beyond advising or even urging a defendant whether to take a plea offer and that counsel has a countervailing obligation not to coerce a client into accepting a plea offer. In his attention to the court's characterization of his claim as a failure to persuade him to accept the state's offer, however, the petitioner has ignored the court's significant and dispositive findings that Dimyan adequately explained both the plea offer and the petitioner's chances at trial.

At the outset, we note that the petitioner testified that Dimyan had explained the state's offer to him. He protested, however, when asked if Dimyan had told him what his chances of winning at trial might be. The court observed that when asked, the petitioner stated: " 'Not to the fullest extent, no.' " The court noted, as well, that the petitioner claimed that Dimyan did not discuss the strength or weakness of the state's case or go over any of the state's evidence against him. The court further noted: "Attorney Dimyan, on the other hand, testified that the state proposed the offer of seven years, suspended after three, with five years of probation after the petitioner was dropped by an alternative incarceration program for being noncompliant. Attorney Dimyan stated that he immediately discussed the offer with the petitioner, adding: 'And, then I continually discussed it

rendered ineffective assistance in connection with a plea offer. Because we conclude that the court properly rejected the petitioner's claim that Dimyan rendered ineffective assistance in regard to the plea offer, we need not address the petitioner's argument as to the proper remedy. We note, however, that our analysis in that regard would be guided by our Supreme Court's recent decision in *Ebron* v. *Commissioner of Correction*, 307 Conn. 342, 53 A.3d 983 (2012).

with him because the last thing I wanted to do was try the case because if we won the first arrest which went to trial . . . my concern was they were going to convict him on the subsequent arrest.' Attorney Dimyan believes that he may have even told the petitioner that he 'didn't have a snowball's chance in hell' of beating all the charges against him at trial. In addition, he claims that he tried to get the petitioner to accept the offer to the point where he even spoke to the petitioner's mother, hoping that she could convince him to take the plea. Attorney Dimyan also testified that he informed the petitioner that there was a 'good likelihood' that he would end up with a jail sentence of double digits if he were to be convicted. Finally, Attorney Dimyan testified: 'Clearly, there is no doubt in my mind that I advised him, that I encouraged him, that if there was any way to strong-arm him I would have. I couldn't have made it any more clear. It was my advice to take that offer. And there is no doubt in my mind he was part of that conversation on more than one occasion.' "

In assessing this conflicting evidence, the court concluded that the petitioner's claims were "simply not credible. The court credits Attorney Dimyan's testimony that he expressed his concern that the petitioner could not realistically prevail at trial on all of the charges against him, and that he did everything short of 'strong-arming' the petitioner into accepting the state's offer." As we have often said, it is uniquely the function of the trial court, and not a court on review, to assess the credibility of witnesses. Here, although the court may have focused on Dimyan's persuasive role in regard to plea negotiations, the court credited, as well, testimony that Dimyan explained the proposed plea bargain to the petitioner and the great likelihood that the petitioner could not defeat all the charges then pending against him. We agree with the court that Dimyan's advice to the petitioner in regard to the state's offer

was constitutionally adequate. From our review of the court's memorandum of decision and the record, it is clear that the court was satisfied that Dimyan had adequately explained the charges against the petitioner to him, had weighed his prospects for success in a global manner with regard to all the charges and had communicated his advice without equivocation that the petitioner should plead guilty pursuant to the terms of the plea offer rather than risk trial and the near certainty that he would be convicted of at least some of the charges, resulting in a likely sentence greater than the state's offer. On this basis, the court concluded, and we agree, that Dimyan's assistance regarding plea negotiations was not constitutionally infirm.

## II

The petitioner makes the second claim that Dimyan's failure to secure a court order requiring the petitioner to post bond in the two files arising after he already was in custody caused him to lose presentence confinement credit on the two last charged files. During the habeas trial, Dimyan testified that he was aware of this issue during his representation of the petitioner and he utilized the petitioner's custody and bond status in his conversations with the prosecutor in negotiating a plea agreement regarding the latter charges. In response to this claim, the court found: "Attorney Dimyan's efforts to use the jail credit as a bargaining chip during the plea negotiations falls within the wide range of reasonable professional assistance and . . . the petitioner has failed to show that Attorney Dimyan's actions were anything other than sound trial strategy." We find no fault with the court's assessment of this claim.

## III

Finally, the petitioner claims that the habeas court's judgment must be reversed because the court made a

factual finding before the close of evidence. We are not persuaded.

The following additional facts are relevant to this claim. One of the petitioner's claims regarding Dimyan's effectiveness was that he did not adequately explain to him the law regarding the possession of a weapon in a motor vehicle, and, thus, the petitioner was not able to make an informed decision as to whether to accept the state's offer or to proceed to trial. During the habeas hearing, the petitioner's habeas counsel asked Dimyan, on cross-examination, whether he had explained the doctrine of constructive possession to the petitioner. Dimyan responded that, although he could not recall the specific content of the conversation, he had discussed the doctrine in laymen's terms with the petitioner. The petitioner's counsel then asked Dimyan, "[n]ow at [the criminal] trial you argued to the jury about the doctrine of [nonexclusive possession]." The state objected to the question on the basis of relevance. The petitioner's counsel stated: "This goes to Mr. Dimyan's legal understanding of the doctrine and whether he explained it." The court responded: "Well, let's get to part two rather than go through all of part one. We understand he understands his legal doctrine." As pointed out by the respondent, the commissioner of correction, in the appellate brief, the petitioner's counsel did not object to the court's comment. Rather, in response to further questioning by the petitioner's counsel, Dimyan explained his understanding of the doctrine but could not recall whether he had argued the issue of nonexclusive possession to the jury in the underlying criminal trial.

On the basis of the court's remark during this colloquy, the petitioner argues that the court acted improperly in determining a fact before the conclusion of trial. Whether such conduct, if it occurred, would be fatal to a fair trial is a question we need not answer in this

instance as the issue is not subject to review. Not only did the petitioner not object to the court's remark, but also his habeas counsel took no action to bring to the court's attention his view that the court had acted improperly. Additionally, and as argued by the respondent, the court's remark, in isolation, does not necessarily imply that the court made a factual finding regarding Dimyan's knowledge of the law, but rather the court's comment can fairly be seen as a sign of the court's disinterest in the issue at that juncture of the hearing. Importantly, if the petitioner believed that the court's comment reflected a predisposition regarding the merits of his claim, it was his duty then to bring this issue to the attention of the habeas court for the court's explanation and not hold it in abeyance for appeal. As we have previously stated: "It is our long-standing position that [t]o review [a] claim, which has been articulated for the first time on appeal and not before the trial court, would result in a trial by ambuscade of the trial judge." (Internal quotation marks omitted.) *Cima* v. *Sciaretta*, 140 Conn. App. 167, 179, 58 A.3d 345 (2013). This we will not do.

The judgment is affirmed.

In this opinion the other judges concurred.