******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# APPENDIX
## ROCCO YASHENKO *v.* COMMISSIONER OF CORRECTION*

Superior Court, Judicial District of Tolland

File No. CV-14-4006262-S

Memorandum filed May 25, 2016

*Proceedings*

Memorandum of decision on petitioner's petition for writ of habeas corpus. *Petition denied.*

*William A. Adsit,* assigned counsel, and *Robert O'Brien,* assigned counsel, for the petitioner.

*Eva B. Lenczewski,* supervisory assistant state's attorney, for the respondent.

*Opinion*

BRIGHT, J.

## I

## INTRODUCTION

The petitioner, Rocco Yashenko, brings this petition for a writ of habeas corpus, claiming that his conviction based upon his guilty plea is unconstitutional because his attorney, Brian Pear, failed to communicate to the state and the court the petitioner's acceptance of an earlier, more favorable plea offer. The petitioner claims that this failure by counsel caused him to accept a much less favorable plea offer. In Count One of his amended petition, the petitioner claims that his sixth amendment right to effective assistance of counsel was violated. In Count Two, he claims that his due process rights under the fifth amendment were violated in that he was coerced to enter into the plea he is now challenging because his acceptance of the earlier plea offer was not communicated to the court. The respondent, the Commissioner of Correction, has denied that any of the petitioner's constitutional rights were violated.

The case was tried to the court on February 5, 2016. The petitioner presented his own testimony, as well as the testimony of Attorney John Drapp, who represented the petitioner after his case was transferred to the part A docket, Donald Cretella, a Connecticut attorney who specializes in criminal matters, and Attorney Pear. The respondent cross-examined the petitioner's witnesses, but called no witnesses of his own. The court also received as exhibits the original information, the substitute information to which the petitioner pleaded guilty, and the transcripts related to the petitioner's court appearances, including his guilty plea and sentencing.

## II

## FINDINGS OF FACT

Based on the evidence presented, the court finds the following facts. On January 26, 2013, the petitioner participated in a burglary of 62 Appleton Street in Waterbury. Accompanying the petitioner in the crime was Anthony Olzewski. A neighbor called the police after observing the petitioner and Olzewski entering the backyard of 62 Appleton Street. The police responded and found the petitioner hiding in the attic of the property. After a brief struggle, the petitioner was arrested. The police also found Olzewski in the residence. A further search of the house disclosed that the petitioner and Olzewski had neatly stacked by the back door the items they intended to steal from the residence, including several small kitchen appliances, three air powered rifles, a Sony PlayStation 3, tools and several other electronic devices.

The petitioner and Olzewski were arrested and

charged. The petitioner was charged with burglary in the first degree, conspiracy to commit burglary in the first degree, larceny in the fifth degree, conspiracy to commit larceny in the fifth degree, criminal mischief in the second degree, conspiracy to commit criminal mischief in the second degree, and interfering with an officer. At the time of his arrest, the petitioner was also facing an outstanding charge of operating a motor vehicle on November 8, 2012, while under suspension. His criminal case was assigned docket number CR-13-0414623 S. His motor vehicle case was docket number MV-12-04244273 S.

The petitioner was arraigned in Waterbury on January 28, 2013. The petitioner made application for a public defender, and on March 1, 2013, Attorney Pear appeared in court with the petitioner for the first time as his assigned counsel on both cases. At the time, the cases were pending in the geographical area number four courthouse.

The petitioner next appeared in court on the charges on March 28, 2013. By that time, the petitioner had discussed with Attorney Pear his desire to enter into a plea agreement with the state. The petitioner knew that the criminal case against him was strong and that he had little chance at prevailing if he took the case to trial. The petitioner also knew that he was exposed to a potentially long sentence because he had prior burglary convictions in Waterbury. In connection with those prior cases, the petitioner had received sentences that included periods of probation. He did not do well on his probations and ended up being prosecuted for violating the probations, and, as a result, being incarcerated. Given his bad experience with probation, the petitioner asked Attorney Pear to negotiate a plea agreement for no more than a flat two years to serve. On March 28, Attorney Pear had discussions with the state's attorney regarding a possible plea. There is no evidence of any offer being made at that time, as the state's attorney informed Attorney Pear that he needed to talk to the victim of the burglary.

The petitioner next appeared in the geographical area number four courthouse on May 3, 2013. The petitioner and Attorney Pear agree that the state made an offer on that date to file a substitute information charging the petitioner with burglary in the third degree, and allowing the petitioner to plead guilty to that charge to resolve his criminal case. In return, the petitioner would agree to a sentence of five years, execution suspended after two years of incarceration, followed by three years of probation (5/2/3 offer). Attorney Pear conveyed the offer to the petitioner. Attorney Pear thought the offer was good for the petitioner in light of the case against him.

The petitioner and Attorney Pear disagree about what happened after Attorney Pear conveyed the offer to the

petitioner. According to the petitioner, he immediately told Attorney Pear that he wanted to accept the offer. Attorney Pear testified that he could not remember exactly what the plaintiff said about the offer. However, after reviewing his file to refresh his recollection, Attorney Pear testified that the petitioner did not want to accept the offer that day. The petitioner still wanted to negotiate a sentence that involved no probation. In addition, Attorney Pear testified that the petitioner wanted to wait to see what happened with Olzewski's case before accepting the state's offer. Attorney Pear further testified that the offer could have been accepted that day and that he would have conveyed the petitioner's acceptance of the offer if the petitioner had instructed him to do so. He also testified that he would not have asked for a continuance of the case against his client's wishes.

The court finds Attorney Pear's account to be more credible. While Attorney Pear had no particular reason to delay resolution of the case, the petitioner did. He was still hopeful that he could ultimately negotiate a plea that did not involve probation. He also hoped that the disposition of his codefendant's case might result in a more favorable disposition for the petitioner. Consequently, the court finds that the petitioner never instructed Attorney Pear to accept the state's offer. Instead, the petitioner told Attorney Pear that he wanted to have the case continued to see if a better offer could be negotiated and to see what happened with his codefendant's case.

This finding is further supported by what happened in court on May 3, after the state's offer was conveyed to the petitioner. The petitioner appeared in court with Attorney Pear. Attorney Pear noted that the state had made an offer that involved jail time. He then asked for a continuance until May 30. Finally, he informed the court that he thought the case would be resolved at that time. At no time did the petitioner express any reservations about the continuance or any desire to accept the state's offer. Furthermore, there was no reason for Attorney Pear to ask that the case be continued for four weeks and then be disposed of, if the petitioner truly wanted to accept the state's offer that day. The brief report by Attorney Pear and the petitioner's silence during it, only confirm that the petitioner did not want to accept the state's offer that day.

The 5/2/3 offer was not placed on the record, and the case was continued until May 30, 2013. While the petitioner did not want to accept the offer on May 3, both he and Attorney Pear expected that the offer would still be available when they returned to court on May 30. That turned out not to be the case.

When the petitioner returned to court on May 30, Attorney Pear was informed that the state had created a new burglary docket due to the rash of burglaries in

Waterbury. All cases involving defendants who were previously convicted of burglaries would be placed on this docket and assigned to one particular prosecutor who would handle the cases on the part A docket. Attorney Pear was informed that the petitioner's criminal case was being transferred to part A as part of this docket. As a result, the 5/2/3 offer made to the petitioner on May 3 was withdrawn. Attorney Pear argued that such a transfer was unfair to the petitioner and contrary to the practice in the district of leaving plea offers open until the next court date. This was the first and only time that Attorney Pear had an offer withdrawn by the state with no advance notice. The state's attorney was not persuaded. Attorney Pear concluded that there was little he could do. The trial judge could not require the state to reduce the charge as contemplated by the plea offer. In any event, the offer had not been accepted.

Consequently, when the petitioner appeared in court on May 30, the state informed him and the court that his criminal case was being transferred to part A. The state offered an unconditional discharge if the petitioner pleaded guilty to the motor vehicle charge. The petitioner agreed, and pleaded guilty to the charge of operating under suspension. He was canvassed by the court, which accepted his plea and entered a sentence of an unconditional discharge.

In July or August, 2013, Attorney Drapp was appointed as a special public defender to represent the petitioner, replacing Attorney Pear. Attorney Drapp learned about the previous 5/2/3 offer from the petitioner. The petitioner told Attorney Drapp that he had accepted the offer on May 30 and had pleaded guilty pursuant to the offer. Attorney Drapp knew this was not true. Instead, he concluded that the petitioner must have misunderstood that his guilty plea on May 30 was only to the motor vehicle charge. Attorney Drapp informed the petitioner that while he was unclear on what happened before the case was transferred to part A, he did know that the 5/2/3 offer was no longer available. Instead, on September 4, 2013, Attorney Drapp informed the petitioner that the state's new offer was a sentence of five years in prison followed by five years of special parole in exchange for a guilty plea on the charge of burglary in the first degree. The petitioner was not happy about the new offer or the fact that he could no longer take advantage of the 5/2/3 offer. Nevertheless, he had no intention of taking his case to trial. However, he still wanted some time to consider the state's offer. Consequently, when the petitioner appeared before the court on September 4, the state agreed to give the petitioner until September 30 to accept or reject the offer. Attorney Drapp then recited the offer on the record. The offer was subsequently extended until October 17, 2013, when the petitioner accepted it.

Prior to accepting the petitioner's guilty plea, the court canvassed the petitioner. The court specifically asked the petitioner if he was pleading guilty voluntarily and of his own free will. The petitioner responded that he was. The petitioner also specifically confirmed that nobody had forced him or threatened him to get him to plead guilty. The court also noted that by pleading guilty, the petitioner was avoiding the possibility of being charged as a persistent offender in light of his prior convictions. The petitioner then confirmed that the state's recitation of the facts, which was consistent with the underlying facts set forth above, was accurate. Finally, the petitioner confirmed that he understood the agreed upon sentence to be five years of incarceration followed by five years of special parole. At no time did the petitioner express any reluctance or reservations about his guilty plea or the agreed upon sentence. At no time did he make any reference to the 5/2/3 offer or claim that he had previously accepted that offer. Nor did the petitioner claim that he felt pressured to plead guilty or that he needed more time to consider his options. The court accepted the petitioner's guilty plea and sentenced him in accordance with the parties' plea agreement. Additional facts will be discussed as necessary.

### III

### DISCUSSION

### A

### Count One—Ineffective Assistance of Counsel

In Count One of his amended petition, the petitioner claims that he was deprived of his constitutional right to the effective assistance of counsel. In particular, he claims that Attorney Pear's performance was constitutionally deficient because Attorney Pear: (1) failed to communicate the petitioner's acceptance of the state's plea offer before it was withdrawn; (2) failed to inform the petitioner of the potential consequences of not accepting the offer; and (3) failed to ensure that the plea offer was preserved and not permitted to lapse.

It is well established that under the sixth and fourteenth amendments to the United States constitution, and article first, § 8, of the Connecticut constitution, a criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of a criminal proceeding. *Strickland* v. *Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The United States Supreme Court has held that pretrial negotiations implicating the decision as to whether to plead guilty are a critical stage in criminal proceedings for purposes of the sixth amendment right to effective assistance of counsel. *Padilla* v. *Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010); *Missouri* v. *Frye*, 566 U.S. 134, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012); *Lafler* v. *Cooper*, 566 U.S. 156, 132

S. Ct. 1376, 182 L. Ed. 2d 398 (2012).

"In today's criminal justice system . . . the negotiation of a plea bargain, rather than the unfolding of a trial, is almost always a critical point for a defendant." *Missouri* v. *Frye*, supra, 566 U.S. 144. Similarly, "[o]ur Supreme Court has recognized that pretrial negotiations implicating the decision of whether to plead guilty is a critical stage, and, therefore, a defendant is entitled to adequate and effective assistance of counsel at this juncture of the criminal proceedings . . . ." (Emphasis omitted; internal quotation marks omitted.) *Gonzalez* v. *Commissioner of Correction*, 122 Conn. App. 705, 724 n.4, 1 A.3d 170 (2010) (*Schaller, J., dissenting*), aff'd, 308 Conn. 463, 68 A.3d 624, cert. denied sub nom. *Dzurenda* v. *Gonzalez*, U.S. , 134 S. Ct. 639, 187 L. Ed. 2d 445 (2013). The decision to plead guilty is "ordinarily the most important single decision in any criminal case." (Internal quotation marks omitted.) *Peterson* v. *Commissioner of Correction*, 142 Conn. App. 267, 273, 67 A.3d 293 (2013). Because the plea bargaining process is a critical stage in a criminal proceeding, "criminal defendants require effective counsel during plea negotiations." *Missouri* v. *Frye*, supra, 144; see *Lafler* v. *Cooper*, supra, 566 U.S. 163. "Anything less . . . might deny a defendant effective representation by counsel at the only stage when legal aid and advice would help him." (Internal quotation marks omitted.) *Missouri* v. *Frye*, supra, 144.

"Although this decision [to plead guilty] is ultimately made by the defendant, the defendant's attorney must make an informed evaluation of the options and determine which alternative will offer the defendant the most favorable outcome. A defendant relies heavily upon counsel's independent evaluation of the charges and defenses, applicable law, the evidence and the risks and probable outcome of a trial." (Emphasis omitted; internal quotation marks omitted.) *Peterson* v. *Commissioner of Correction*, supra, 142 Conn. App. 273.

In *Missouri* v. *Frye*, supra, 566 U.S. 134, the United States Supreme Court held that "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Id., 145. When defense counsel allows an offer to expire without advising the defendant or allowing him to consider it, defense counsel does not render the effective assistance the constitution requires. Id.

This principle logically applies to counsel's duty to communicate a client's response to such an offer. The duty to convey a plea offer to a defendant would have little meaning if counsel did not have a corresponding duty to communicate to the state and the court that his client has accepted the offer. Consequently, failure to inform the state or the prosecutor that a client has accepted an offer made to him would constitute defi-

cient performance.

It is important to remember, though, that when assessing counsel's performance during the plea negotiating process, the habeas court is still required to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Strickland* v. *Washington*, supra, 466 U.S. 689. The United States Supreme Court explained: "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation . . . the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." (Citation omitted; internal quotation marks omitted.) Id.

"To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law. To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time. Cf. *Glover* v. *United States*, 531 U.S. 198, 203 [121 S. Ct. 696, 148 L. Ed. 2d 604] (2001) ('[A]ny amount of [additional] jail time has [s]ixth [a]mendment significance')." *Missouri* v. *Frye*, supra, 566 U.S. 147; see also *Ebron* v. *Commissioner of Correction*, 307 Conn. 342, 357, 53 A.3d 983 (2012) (to show prejudice in lapsed plea case, petitioner must establish: "[1] it is reasonably probable that, if not for counsel's deficient performance, the petitioner would have accepted the plea offer, and [2] the trial judge would have conditionally accepted the plea agreement if it had been presented to the court"), cert. denied sub nom. *Arnone* v. *Ebron*, U.S. , 133 S. Ct. 1726, 185 L. Ed. 2d 802 (2013). "In order to complete a showing of *Strickland* prejudice, defendants who have shown a reasonable probability they would have accepted the earlier plea offer must also show that, if the prosecution had the discretion to cancel it or if the trial court had the discretion to refuse to accept it, there is a reasonable probability neither the prosecution nor the trial court would

have prevented the offer from being accepted or implemented." *Missouri* v. *Frye*, supra, 148.

Applying these same principles to a case where counsel failed to communicate his client's acceptance of the state's offer, the petitioner must prove that: (1) the offer was still available when the petitioner instructed his counsel to accept it; (2) the failure to communicate acceptance of the offer resulted in it lapsing or being withdrawn such that it was no longer available to the petitioner; (3) there is a reasonable probability that the trial judge would have accepted the plea agreement; and (4) the outcome of the proceeding was worse for the petitioner than the offer.

The petitioner cannot succeed on his first claim of deficient performance because he has not proven that he instructed Attorney Pear to accept the 5/2/3 offer. It is undisputed that the state made such an offer and that Attorney Pear communicated it to the petitioner. It is also undisputed that Attorney Pear and the petitioner discussed the offer. As noted above, though, the court does not find credible the petitioner's testimony that he instructed Attorney Pear to accept the offer. To the contrary, the court finds, based on Attorney Pear's testimony, that the petitioner wanted to have the case continued to see what happened with his codefendant's case, and to see if the state would agree to a sentence that included no probationary period. Attorney Pear cannot be blamed for not communicating an acceptance that never occurred.

The petitioner alternatively claims that Attorney Pear was deficient for failing to make sure on May 3 that the 5/2/3 offer was preserved until the next court date on May 30. Presumably, the petitioner is claiming that Attorney Pear could have done so either by getting the state's express commitment to keep the offer open and/ or by having the offer placed on the record in open court, as Attorney Drapp did with the state's second offer on September 4. The court is not persuaded.

The offer placed on the record on September 4 was set down to be accepted or rejected on the next court date. Those were the choices that the petitioner had at that time. There is no evidence that either the petitioner or the state intended to negotiate further. By contrast, the petitioner did not accept the 5/2/3 offer on May 3 specifically because he hoped for a better offer on his next court date. Had Attorney Pear put the offer on the record and asked for an accept or reject date, he would have communicated to the state and the court that that was the offer under consideration and there would be no more negotiations. That was not the petitioner's intention.

While Attorney Cretella testified that it is his customary practice to put offers made in the geographical area courthouses on the record, he did not testify that it

would be deficient performance not to do so. Such a conclusion would require that every time the state makes an offer to a defendant, that it is stated on the record. There was no evidence that this is the practice in any criminal court in this state. Attorney Pear testified that it was not his typical practice in the geographical area number four courthouse to put offers on the record. The court concludes that it is fairly typical for counsel to place an offer on the record only if it is the state's final offer to be accepted or rejected, or when it is necessary to make a record of an offer that was rejected by a defendant. Neither circumstance applied here. Attorney Pear's failure to recite the 5/2/3 offer on the record was not unreasonable.

Nor was it unreasonable for Attorney Pear not to extract an explicit promise from the state to keep the offer open until the next court date. First, doing so would have sent a signal to the state that the offer was acceptable, and would have undermined the petitioner's attempts to secure a better offer. Second, Attorney Pear testified that he probably did not ask the state to keep the offer open because he had never had an issue with the state doing so. In fact, the offer was withdrawn here only because of the unique circumstance of the state's deciding between May 3 and May 30 to create the specialized burglary docket. There was no evidence that Attorney Pear could have or should have anticipated this development. While in hindsight one might question whether he should have explicitly preserved the offer, the court cannot say that based on what Attorney Pear knew on May 3, that his decision not to do so constitutes deficient performance.

For the same reason, the petitioner's final claim that Attorney Pear failed to advise him of the consequences of not accepting the offer fails. Attorney Pear could not have anticipated the circumstance that caused the offer to be withdrawn. Based on past experience, he reasonably believed that the 5/2/3 offer would still be available on May 30 if he was not able to negotiate a better deal. His failure to caution the petitioner about a contingency that he could not have foreseen does not constitute deficient performance.

Because the petitioner has failed to prove that Attorney Pear's performance was deficient, he cannot succeed on his claim of ineffective assistance of counsel.

### B
### Count Two—Voluntariness
### Of October 17, 2013
### Guilty Plea

In Count Two of his amended petition, the petitioner claims that his guilty plea on October 17, 2013, to the charge of burglary in the first degree was not voluntary. In particular, he claims that Attorney Pear's negligence in not conveying the petitioner's acceptance of the 5/

2/3 offer and/or in making sure that the offer was preserved for the next court date somehow undermines the voluntariness of his subsequent plea.

Because this claim is premised on Attorney Pear's conduct, it is inextricably tied to the petitioner's ineffective assistance of counsel claim. As such, this claim cannot succeed. First, the court finds that the petitioner did not want to accept the 5/2/3 offer on May 3. Thus, there was no acceptance for Attorney Pear to communicate. Second, the court finds that Attorney Pear did not act unreasonably by not placing the 5/2/3 offer on the record on May 3 or by not getting an explicit promise from the state to keep the offer open.

Furthermore, the evidence is clear that the petitioner's plea on October 17, 2013, was knowing and voluntary. First, he explicitly told the court that it was. Second, there is no evidence that he did not completely understand exactly what he was doing when he pleaded guilty. Third, the petitioner was clear to both Attorney Pear and Attorney Drapp that he did not want to go to trial. He wanted to plead guilty. While he may have been disappointed that the state's offer on October 17 was not as good as the offer he received and chose not to accept on May 3, that does not mean that his plea on October 17 was involuntary. The petitioner's disappointment in no way undermines the validity of his guilty plea. He made a knowing and rational decision that rather than going to trial on a case he was almost certain to lose and risk exposure to a much longer sentence, he was better off accepting five years in prison followed by five years of special parole.

For these reasons, the petitioner has failed to prove his claim in Count Two.

## IV

## CONCLUSION

For the foregoing reasons, the petition is denied and judgment shall enter for the respondent.

* Affirmed. *Yashenko* v. *Commissioner of Correction*, 177 Conn. App. , A.3d (2017).

---