******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

RICHARD QUINT *v.* COMMISSIONER
OF CORRECTION
(AC 44162)

Prescott, Suarez and Bishop, Js.

*Syllabus*

The petitioner, who had been convicted previously of operating a motor
vehicle while under the influence of intoxicating liquor or drugs, failure
to register as a sex offender, and possession of narcotics, sought a writ
of habeas corpus, claiming that he received ineffective assistance from
his criminal trial counsel. The habeas court rendered judgment denying
the habeas petition, from which the petitioner, on the granting of certifi-
cation, appealed to this court. *Held*:

1. The habeas court properly determined that the petitioner's trial counsel
did not render ineffective assistance by failing to meaningfully explain
the state's plea offer: the habeas court explicitly credited the testimony
of counsel that he had sufficiently apprised the petitioner of the contours
of the state's plea offer, as he had advised the petitioner about the
strength of the state's case, the charges and the elements of each offense
that the state would have to prove to secure a conviction at trial, the
petitioner's overall maximum exposure in the case, his chances of acquit-
tal at trial, that the plea offer was "phenomenal," and that it was not to
the petitioner's advantage to take his case to trial, and counsel discussed
potential defenses with the petitioner; moreover, the petitioner made
no claim that the habeas court's factual findings were clearly erroneous,
and it was the function of that court to weigh the evidence and determine
credibility.

2. The habeas court properly determined that the petitioner's trial counsel
did not render ineffective assistance by failing to ensure that the peti-
tioner would receive presentence jail credit for the time he had served
between his sentencing in a separate proceeding at the Superior Court
in the judicial district of New Haven at Meriden and his sentencing in
the Superior Court in the judicial district of Fairfield for this case: the
petitioner failed to establish a reasonable probability that, if not for his
counsel's alleged deficient performance, he would not have pleaded
guilty and would have insisted on going to trial, as he testified twice at
the habeas trial that he would have pleaded guilty or that he likely
would have pleaded guilty regardless of his trial counsel's failure to
ensure that he would receive presentence jail credit, and, therefore, he
failed to demonstrate that he suffered prejudice as a result of any alleged
deficiency in his trial counsel's performance.

Argued November 16, 2021—officially released March 1, 2022

*Procedural History*

Petition for a writ of habeas corpus, brought to the
Superior Court in the judicial district of Tolland and
tried to the court, *Chaplin, J.*; judgment denying the
petition, from which the petitioner, on the granting of
certification, appealed to this court. *Affirmed*.

*Justine F. Miller*, assigned counsel, for the appellant
(petitioner).

*James A. Killen*, senior assistant state's attorney,
with whom, on the brief, were *Joseph T. Corradino*,
state's attorney, and *Cornelius Kelly*, former assistant
state's attorney, for the appellee (respondent).

*Opinion*

BISHOP, J. In this certified appeal from the judgment of the habeas court denying his petition for a writ of habeas corpus, the petitioner, Richard Quint, claims that the court improperly concluded that his trial counsel rendered effective assistance. On appeal, the petitioner asserts that the record establishes that his counsel failed (1) to meaningfully communicate the state's plea offer and (2) to ensure that the petitioner would receive presentence jail credit for the time that he was incarcerated between his March 17, 2017 sentencing in the Superior Court in the judicial district of New Haven at Meriden (Meriden) and his April 10, 2017 sentencing in the Superior Court in the judicial district of Fairfield (Bridgeport).[1] We affirm the judgment of the habeas court.

The following facts and procedural history are relevant to this appeal. On February 10, 2017, in the Superior Court in Bridgeport, the petitioner pleaded guilty pursuant to the *Alford* doctrine[2] to multiple criminal charges, including (1) one count of operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of General Statutes § 14-227a, (2) one count of failure to register as a sex offender in violation of General Statutes § 54-252, and (3) two counts of possession of narcotics in violation of General Statutes § 21a-279 (a) (1). During the plea canvass, the court questioned the petitioner and his counsel, Attorney Michael Hillis, as to the knowing, voluntary, and intelligent nature of the petitioner's pleas.[3] The court informed the petitioner that if he was convicted after a trial, he faced a possible maximum sentence of seven and one-half years of imprisonment, followed by five years of probation and potential fines.

The court found that the petitioner's pleas were knowing and voluntary, accepted the pleas, and scheduled his sentencing for March 3, 2017. The sentencing date was postponed to March 17, 2017, to allow for a hearing concerning the state's seizure of the petitioner's money as a result of the criminal charges.

On March 3, 2017, the petitioner entered a plea under the *Alford* doctrine in the Superior Court in Meriden on the charge of carrying a pistol without a permit in violation of General Statutes § 29-35 (a).[4] The court imposed a total effective sentence of one year to serve, and the court stayed the execution of the sentence until March 17, 2017—the scheduled sentencing date for the petitioner's matters in the Superior Court in Bridgeport. On March 17, 2017, the Superior Court in Meriden lifted the stay, imposing the mandatory minimum sentence of one year to serve; however, the petitioner was not sentenced for the matters in the Superior Court in Bridgeport on this date as originally scheduled because Hillis had requested that the sentencing be continued

until April 10, 2017.[5]

The sentencing hearing in the Superior Court in Bridgeport took place on April 10, 2017. At the hearing, the state and the petitioner agreed to split the seized money, each taking $434. With respect to the charge of failure to register as a sex offender, the court imposed a sentence of five years of incarceration, execution suspended after one year and three years of probation. With respect to each of the two charges of possession of narcotics, the court imposed a concurrent sentence of one year of incarceration. With respect to the charge of operating a vehicle while under the influence of intoxicating liquor or drugs, the court imposed a concurrent sentence of six months of incarceration. The total effective sentence imposed was five years of incarceration, execution suspended after one year, with three years of probation. Hillis requested that the court indicate on the mittimus that the petitioner should be entitled to jail credit on his sentences dating back to December 22, 2016, the date he was incarcerated for these charges.

Immediately as the court began to announce the sentence, the petitioner indicated for the first time that he thought that the offense of operating under the influence had been nolled at the plea proceeding on February 10. The court and Hillis indicated that the petitioner was incorrect as that charge was not nolled. Hillis twice asked the petitioner whether the petitioner wanted him to ask the court to vacate the plea and the sentence, to which the petitioner declined.

On May 2, 2017, the petitioner filed a petition for a writ of habeas corpus in the Superior Court in the judicial district of Tolland. On December 14, 2018, the petitioner filed an amended petition asserting claims related to the Bridgeport convictions, that Hillis (1) failed to meaningfully explain the plea offer to the petitioner, (2) failed to adequately advise the petitioner of the charges encompassed in the plea offer, (3) failed to ensure that the petitioner understood the consequences of the guilty plea, (4) failed to seek a sentencing date that would minimize or eliminate the petitioner's "dead time,"[6] (5) failed to adequately request jail credit at sentencing, and (6) improperly pressured the petitioner to accept the plea offer. After an evidentiary hearing, the habeas court concluded that the petitioner failed to demonstrate that his trial counsel's performance in the underlying criminal proceedings constituted deficient performance or that he suffered prejudice and denied the petition for a writ of habeas corpus. The petitioner filed a petition for certification to appeal from the habeas court's ruling, which the court granted on February 28, 2020. This appeal followed.

In this certified appeal, the petitioner claims that the habeas court erred in concluding that he had failed to demonstrate that his trial counsel rendered ineffective assistance. We are not persuaded.

We begin by setting forth the relevant standard of review and decisional law that guide our analysis of the petitioner's claims. "When reviewing the decision of a habeas court, the facts found by the habeas court may not be disturbed unless the findings were clearly erroneous. . . . The issue, however, of [w]hether the representation [that] a defendant received at trial was constitutionally inadequate is a mixed question of law and fact. *Strickland* v. *Washington*, [466 U.S. 668, 698, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)]. As such, that question requires plenary review by this court unfettered by the clearly erroneous standard. . . . Under the *Strickland* test, when a petitioner alleges ineffective assistance of counsel, he must establish that (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance. . . . Furthermore, because a successful petitioner must satisfy both prongs of the *Strickland* test, failure to satisfy either prong is fatal to a habeas petition. . . .

"To satisfy the first prong, that his counsel's performance was deficient, the petitioner must establish that his counsel made errors so serious that [counsel] was not functioning as the counsel guaranteed the [petitioner] by the [s]ixth [a]mendment. . . . The petitioner must thus show that counsel's representation fell below an objective standard of reasonableness considering all of the circumstances. . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. [Id.] 689. Furthermore, the right to counsel is not the right to perfect counsel." (Internal quotation marks omitted.) *Peterson* v. *Commissioner of Correction*, 142 Conn. App. 267, 271–72, 67 A.3d 293 (2013).

I

The petitioner first claims that his trial counsel rendered ineffective assistance by failing to meaningfully explain the state's plea offer. Specifically, the petitioner claims that his trial counsel should have advised him of the strength of the state's evidence, the elements of the offenses, potential defenses, the chances of acquittal, and the petitioner's total effective exposure had he proceeded to trial. The respondent, the Commissioner of Correction, contends that the petitioner failed to meet his burden of proving that he was denied the effective assistance of counsel and argues that the petitioner's challenge to the habeas court's ruling is based on the erroneous premise that the court credited the petitioner's own testimony in support of each of his

claims. The record supports the respondent's argument.

"To determine whether trial counsel's performance fell below an objective standard of reasonableness and whether the petitioner was therefore prejudiced, we must consider the nature of the underlying claim. . . . Although there had been some debate about whether the constitutional right to the effective assistance of counsel applies to the rejection of a plea offer by the government, it is now well settled that a criminal defendant has the right to the effective assistance of counsel in conjunction with the acceptance or rejection of a plea offer." (Citation omitted; internal quotation marks omitted.) *Peterson* v. *Commissioner of Correction*, supra, 142 Conn. App. 272.

"[C]ounsel must communicate to the defendant the terms of the plea offer . . . and should usually inform the defendant of the strengths and weaknesses of the case against him . . . . Counsel's conclusion as to how best to advise a client in order to avoid, on the one hand, failing to give advice and, on the other, coercing a plea enjoys a wide range of reasonableness because [r]epresentation is an art . . . and [t]here are countless ways to provide effective assistance in any given case . . . . Counsel rendering advice in this critical area may take into account, among other factors, the defendant's chances of prevailing at trial . . . ." (Internal quotation marks omitted.) Id., 274.

Both the petitioner and Hillis testified at the habeas trial, each conflicting with the other's testimony. The petitioner testified that Hillis did not discuss the case with him with particularity. Specifically, he testified that Hillis only "somewhat" discussed the charges and elements of each offense with him, failed to advise him of potential defenses, failed to discuss the chances of acquittal at trial, and failed to advise him of his maximum exposure should he elect to go to trial. To the contrary, Hillis testified that he comprehensively discussed the case with the petitioner during telephone calls and in person, which included discussing the charges and elements of each offense, discovery materials, and the strengths of the defenses to the state's case against the petitioner. In addition, he testified that he had advised the petitioner that it was not advisable to take the case to trial due to the strength of the evidence involved. He testified further that the petitioner had expressed an understanding of the law and had significant prior experience with the criminal justice system.

Fatal to the petitioner's claim is the fact that the court explicitly credited Hillis' testimony—that he sufficiently apprised the petitioner of the contours of the state's plea offer. Specifically, the court found that Hillis had (1) advised the petitioner about the strength of the state's case, (2) advised the petitioner about the charges and the elements of each offense that the state would have to prove to secure a conviction at trial, (3) dis-

cussed the potential defenses with the petitioner, (4) advised the petitioner of his chances of acquittal at trial by advising him that the plea offer was phenomenal and that it was not to his advantage to take his case to trial, and (5) advised the petitioner as to his overall maximum exposure in the Bridgeport disposition, and, in his testimony at the habeas trial, the petitioner demonstrated his understanding of the sentence under the plea agreement in contrast to the fifteen and one-half years maximum exposure for the offenses charged. The court also credited Hillis' testimony that the petitioner "was a good participant in discussions about his case, expressed an understanding of the law and had significant experience with the criminal justice system."

The petitioner makes no claim that the court's factual findings were clearly erroneous. It is the function of the habeas court to weigh the evidence and determine credibility. See *Sanchez* v. *Commissioner of Correction*, 314 Conn. 585, 604, 103 A.3d 954 (2014) ("[W]e must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.)). Because the habeas court found credible Hillis' testimony that he meaningfully explained to the petitioner the contours of the state's plea offer, we cannot conclude that the petitioner's counsel rendered deficient performance.[7]

II

Next, the petitioner claims that his trial counsel's failure to ensure that he would receive presentence jail credit for the time he had served between the March 17, 2017 sentencing in the Superior Court in Meriden and the April 10, 2017 sentencing in the Superior Court in Bridgeport was deficient and prejudicial. Specifically, the petitioner argues that Hillis "made no effort to persuade the Meriden public defender to postpone the March 17 sentencing and reschedule it for the April 10 . . . Bridgeport sentenc[ing], or in the alternative, at the April 10 sentencing to implore [the trial judge] to make the start date of the sentence there retroactive to the March 17 date of the commencement of the Meriden sentence" in order to ensure that the petitioner did not serve "dead time." The respondent argues that "the petitioner expressly acknowledged . . . that any delay in his release date due to the Bridgeport sentencing continuance would not have mattered and that he nevertheless still would have accepted the plea offer and entered his *Alford* pleas."

In its analysis, a reviewing court may look to the performance prong or the prejudice prong first. We rely on the prejudice prong.[8] "A petitioner's claim will succeed only if *both* prongs are satisfied. . . . Unless

a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unworkable. . . . A court can find against a petitioner, with respect to a claim of ineffective assistance of counsel, on *either* the performance prong or the prejudice prong, whichever is easier." (Emphasis added; internal quotation marks omitted.) *Leon* v. *Commissioner of Correction*, 189 Conn. App. 512, 531, 208 A.3d 296, cert. denied, 332 Conn. 909, 209 A.3d 1232 (2019).

"For effectiveness claims resulting from guilty pleas, we apply the standard set forth in *Hill* v. *Lockhart*, [474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985)] which modified *Strickland*'s prejudice prong. . . . To satisfy the prejudice prong, the petitioner must show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. . . . Reasonable probability does not require the petitioner to show that counsel's deficient conduct more likely than not altered the outcome in the case, but he must establish a probability sufficient to undermine confidence in the outcome. . . . A reviewing court can find against a petitioner on either ground, whichever is easier." (Internal quotation marks omitted.) *Merle S.* v. *Commissioner of Correction*, 167 Conn. App. 585, 599, 143 A.3d 1183 (2016).

The petitioner bore the burden of presenting sufficient evidence to establish that it is reasonably probable that, if not for his counsel's alleged deficient performance, he would not have pleaded guilty but would have insisted on going to trial. See id. The plaintiff failed to meet this burden. At the habeas trial, the petitioner was asked the following question: "[H]ad Attorney Hillis explained to you that you'd be serving dead time because of the way you were sentenced, would that have impacted your decision to plead out in this case?" The petitioner testified that "[i]t wouldn't have had any impact on it at all . . . ." Additionally, the petitioner was asked: "And had you known that you would have to do an extra month in jail, would you have accepted the deal?" The petitioner testified that he "probably would have still accepted the plea deal . . . ." In its memorandum of decision, the habeas court expressly found that the petitioner would not have withdrawn his pleas even if he had been correctly advised of the consequences of the dead time. It therefore found that "[t]he petitioner's testimony demonstrate[d] that he suffered no prejudice." The petitioner has not established a probability sufficient to undermine confidence in the outcome, having twice testified at the habeas trial that he would have pleaded guilty or that he likely would have pleaded guilty regardless of Hillis' alleged failure to ensure that he would receive presentence jail credit. Because the petitioner cannot demonstrate that he has suffered prejudice as a result of any alleged deficiency in Hillis' performance, we conclude that the petitioner's

claim of ineffective assistance of counsel fails. See *Merle S.* v. *Commissioner of Correction*, supra, 167 Conn. App. 599.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Upon our review of the briefs, it is unclear whether the petitioner also asserts a third claim concerning counsel's alleged failure to ensure that the petitioner would receive presentence jail credit, independent of his decision of whether to plead guilty. Nevertheless, even if this claim is being made, this claim is inadequately briefed for our review. See *Villafane* v. *Commissioner of Correction*, 190 Conn. App. 566, 578–79, 211 A.3d 72, cert. denied, 333 Conn. 902, 215 A.3d 160 (2019).

[2] "Under *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), a criminal defendant is not required to admit his guilt . . . but consents to being punished as if he were guilty to avoid the risk of proceeding to trial. . . . A guilty plea under the *Alford* doctrine is a judicial oxymoron in that the defendant does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea nevertheless. . . . A defendant often pleads guilty under the *Alford* doctrine to avoid the imposition of a possibly more serious punishment after trial." (Internal quotation marks omitted.) *State* v. *Baldwin*, 183 Conn. App. 167, 169 n.1, 191 A.3d 1096, cert. denied, 330 Conn. 922, 194 A.3d 288 (2018).

[3] During the court's plea canvass, the following colloquy took place:

"The Court: Have you discussed with your attorney what you're pleading guilty to today?

"[The Petitioner]: Yes.

"The Court: Did he go over the elements of each crime charged which the state would have to prove you guilty of beyond a reasonable doubt?

"[The Petitioner]: Yes

"The Court: Did he explain the evidence that would prove each element beyond a reasonable doubt?

"[The Petitioner]: Yes.

"The Court: Did he explain to you the maximum penalty for each charge?

"[The Petitioner]: Yes.

* * *

"The Court: Are you satisfied with how he represented you?

"[The Petitioner]: Yes.

"The Court: Counsel, did you go over all of this with your client?

"[Attorney Hillis]: Yes, Your Honor.

* * *

"The Court: The court finds the pleas are knowingly and voluntarily made with assistance of effective and competent counsel. . . ."

[4] The petitioner was not represented by Hillis in the Meriden matter.

[5] At the habeas trial, Hillis explained that he was either sick or on another trial as the reason for requesting the change in the sentencing date in the Superior Court in Bridgeport.

[6] "[D]ead time is prison parlance for presentence confinement time that cannot be credited because the inmate is a sentenced prisoner serving time on another sentence." (Internal quotation marks omitted.) *Bagalloo* v. *Commissioner of Correction*, 195 Conn. App. 528, 531 n.2, 225 A.3d 1226, cert. denied, 335 Conn. 905, 226 A.3d 707 (2020).

[7] In light of our determination that the petitioner failed to establish that Hillis' performance was deficient, we need not address the prejudice prong. See *Leon* v. *Commissioner of Correction*, 189 Conn. App. 512, 531, 208 A.3d 296, cert. denied, 332 Conn. 909, 209 A.3d 1232 (2019).

[8] In the court's memorandum of decision, it noted that "[t]he petitioner testified that he probably still would have accepted the plea deal if his attorneys had not coordinated the sentences to be imposed on the same date. . . . [H]e testified that . . . Hillis explaining the implications of him serving any dead time would not have had any impact on his entering the pleas. Additionally, the petitioner also testified as to his overall satisfaction with the total effective sentence imposed [concerning the Bridgeport convictions]." On that basis, we focus solely on the prejudice prong.